[No 20952. Department One. February 20, 1928.]

*In the Matter of the Contempt of* Earl R. Pulver *et al.*[1]

[1] Bankruptcy (16)—Discharge—Debts Created by Fraud.  A discharge in bankruptcy from all debts "excepting such debts as are by law excepted from a discharge" does not discharge a judgment on a liability for obtaining money by false representations; and the state courts will go behind the record and determine from the pleadings and instructions the nature of the liability.

[2] Bankruptcy (16)—Husband and Wife (84)—Discharge—Liability of Community Property.  The fact that a sales agent acting for the benefit of himself and his marital community, obtained money for his principal by false representations, renders him and the community liable for a debt that is exempt from discharge in bankruptcy, under § 35 of the bankruptcy act.

[3] Election of Remedies (5)—Validity—Mistaken Remedy.  The seeking of a mistaken remedy, by asking the revocation of a discharge in bankruptcy as to a judgment that was exempt from discharge, is not an election of remedies, preventing the creditor from enforcing his judgment as one that had not been discharged.

[4] Husband and Wife (84)—Community Property—Fraud of Husband.  The false representations of the husband for the benefit of the marital community are the representations of the community, creating a liability on the part of the community that is exempt from discharge, under § 35 of the bankruptcy act.

[5] Execution (91)—Supplementary Proceedings—Persons Against Whom May be Obtained.  Where a judgment, exempt from discharge under the bankruptcy act, was rendered against a community on a liability for the false representations of the husband, the wife as well as the husband, is subject to examination under supplemental proceedings.

Fullerton, J., dissents.

Appeal from an order of the superior court for King county, Beals, J., entered September 17, 1927, upon finding defendants guilty of contempt of court. Affirmed.

[1]Reported in 264 Pac. 406.

*William H. Pemberton, Roy D. Robinson,* and *Karl H. Kober,* for appellants.

*Joseph C. Cheney,* for respondents.

PARKER, J.—This controversy first came into this court as a prohibition proceeding on the relation of Earl R. Pulver and Minnie C. Pulver, his wife, looking to the prohibiting of the enforcement of orders of the superior court for King county adjudging them to be in contempt of that court, and committing them to jail until they submit to examination and answer inquiries touching their property and finances in a supplemental proceeding pending in that court looking to the collection of a judgment rendered therein against Earl R. Pulver and their marital community. Before the prohibition proceeding was heard upon the merits in this court, the relators perfected appeals from the respective orders adjudging them to be in contempt.

The contentions of the relators and appellants are the same in the prohibition proceeding as in their respective appeals; that is, that the superior court was wholly without jurisdiction to compel them to answer in the supplemental proceeding, because the judgment upon which that proceeding was rested had been, in legal effect, wholly satisfied by the subsequent discharge in bankruptcy of Earl R. Pulver and the community awarded to them by the Federal court of the western district of this state. Because of this intimate relationship between the prohibition proceeding and these appeals, they have all been united and considered in this court as one case, to be disposed of accordingly.

In August, 1923, Alfred D. Johnson commenced an action in the superior court for Yakima county seeking recovery of damages against Pulver and the community in the sum of $15,000, alleging, in substance:

that on November 1, 1920, and for some time prior
thereto, Pulver and the community were largely in-
terested in and owned a considerable portion of the
capital stock of a Montana mining company claiming
to possess mining property of great value in the state
of Montana; that Pulver maintained an office in the
city of Yakima for the sale and disposal of treasury
capital stock of that company; that Pulver, acting for
the mutual financial benefit of himself and the com-
munity composed of himself and wife, made false and
fraudulent representations to Johnson, thereby induc-
ing Johnson to purchase 15,000 shares of the capital
stock of that company and pay therefor the sum of
$15,000. These allegations are followed by more spe-
cific allegations as to the nature of the alleged repre-
sentations and their falsity and the worthlessness of
the stock; all of which renders it plain that recovery
in that action was sought wholly upon the theory that
whatever liability arose, and for which recovery was
therein sought, was rested upon Pulver's acting in
behalf of himself and the community, and thus induc-
ing Johnson to purchase the stock and thereby obtain
from him the $15,000 by false representations. The
prayer for judgment in that case was for recovery of
$15,000 damages against Pulver and the community
consisting of him and his wife.

The case proceeded to trial before the court sitting
with a jury, plainly upon the theory that whatever re-
covery should be awarded to Johnson would be upon
the theory of Pulver's having so obtained from him
the $15,000 by false representations. This was ultimate-
ly further plainly evidenced by the instructions given
by the court to the jury. The jury returned a verdict
awarding to Johnson recovery in the sum of $15,000
as against Pulver and the community. On January

5, 1924, final judgment was accordingly rendered by the superior court for Yakima county upon that verdict.

On March 25, 1924, Pulver and the community consisting of himself and wife were adjudged bankrupts by the Federal district court of the western district of this state; this upon the voluntary petition of Pulver, filed in behalf of himself and the community, he having scheduled among his liabilities the judgment rendered by the superior court for Yakima county in favor of Johnson, though not having scheduled that judgment in such manner as to show that it was rendered upon false representations. On June 9, 1924, upon due proceedings had in that behalf, Pulver and the community were by the Federal district court in the bankruptcy proceedings

"   .   .   .   discharged from all debts and claims .   .   . excepting such debts as are by law excepted from a discharge in bankruptcy."

On July 8, 1925, which, it will be noticed, was more than one year after the discharge awarded by the federal court to Pulver and the community, Johnson, the judgment creditor, made application to the Federal court in the bankruptcy proceeding to revoke the discharge of Pulver and the community awarded by that court, alleging that:

"Your petitioner Johnson has a provable debt against the bankrupts in the sum of $15,000, which debt is represented by a judgment obtained in favor of your petitioner Johnson and against the bankrupt Pulver, rendered in the superior court of the state of Washington for Yakima county on January 5, 1924, which debt is scheduled by the bankrupts, and which debt will be affected by the discharge of the bankrupts;"

and further alleging facts as ground for revocation of the discharge. This application coming on for hearing

in the Federal court was, on August 17, 1925, dismissed, the court in its order reciting, as ground therefor, that "the petition to revoke said discharge was not filed or served within one year subsequent to the date of the execution and filing of said discharge and the same is barred."

The judgment having been duly made of record in the superior court for King county, on July 15, 1927, Johnson instituted a supplemental proceeding in that court, looking to the examination of Pulver and wife, to the end that property might be brought to light and subjected to the satisfaction of the judgment; counsel for Johnson proceeding upon the theory that the judgment and the liability evidenced thereby had not been in law discharged by the general bankruptcy discharge awarded to Pulver and the community by the Federal court. The supplemental proceeding coming on for hearing, and Pulver and wife being present and refusing to answer questions touching their property and finances, in pursuance of advice of their counsel, given upon the theory that the court had no jurisdiction because of the claimed satisfaction of that judgment and the discharge of the debt upon which it was rested, judgments for contempt were rendered against Pulver and wife, committing them to imprisonment until they should submit to examination in the supplemental proceedings, as we have already noticed.

The only portions of our national bankruptcy law, necessary to notice in our present inquiry, referring to sections of Title 11 relating to bankruptcy, of our new United States code, are the following:

"(32) Any person may, after the expiration of one month and within the next twelve months subsequent to being adjudged a bankrupt, file an application for a discharge in the court of bankruptcy in which the proceedings are pending; . . . The judge shall

hear the application for a discharge and such proofs and pleas as may be made in opposition thereto by the trustee or other parties in interest, . . . and discharge the applicant unless he has . . . (3) obtained money or property on credit upon a materially false statement in writing, made by him to any person or his representative for the purpose of obtaining credit from such person; . . .

"(33) The judge may, upon the application of parties in interest who have not been guilty of undue laches, filed at any time within one year after a discharge shall have been granted, revoke it upon a trial if it shall be made to appear that it was obtained through the fraud of the bankrupt, and that the knowledge of the fraud has come to the petitioners since the granting of the discharge, and that the actual facts did not warrant the discharge. . . .

"(35) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as . . . (second) are liabilities for obtaining property by false pretenses or false representations, . . ."

Viewing the whole of the record before us, it hardly needs argument to demonstrate that the liability for which the judgment was rendered was a "liability for obtaining property [money] by . . . false representations" within the meaning of the language of § 35 above quoted.

[1] Counsel for Pulver and the community seem to argue that our inquiry as to the nature of the liability for which the judgment was rendered is here limited to the face of the judgment, and that, since the nature of the liability is not in terms therein disclosed, we must conclusively presume that the liability belongs to that class of debts or liabilities dischargeable in bankruptcy. It may be conceded for argument's sake that the liability became merged in the judgment as a final adjudication of Johnson's right to recover from Pulver and the community, and that, had we

nothing else before us, the presumption that the judgment was rendered for a dischargeable liability should prevail. But having before us the pleadings in that case, presenting the sole issue of obtaining money by false representations, and the instructions of the court, plainly submitting that sole issue to the jury, it becomes as plain that the verdict and judgment were rendered for obtaining money by false representations as if specifically so recited in the judgment. We are of the opinion that we should look through the judgment to the record disclosing the issues of the case and the theory upon which it was tried, to determine the nature of the liability for which it was rendered, and thus determine whether or not that liability was discharged by the general discharge awarded by the Federal court. *Forsyth v. Vehmeyer,* 177 U. S. 177; *In re Shepardson,* 220 Fed. 186; *Nichols v. Doak,* 48 Wash. 457, 93 Pac. 919; *Mineah v. Duffy,* 103 Wash. 547, 175 Pac. 170. We think, so viewing the liability evidenced by the judgment, read in the light of the record in the case, it is plainly a liability for obtaining property by false representations and hence was not discharged by the general discharge awarded by the Federal court.

[2] Contention is made in behalf of Pulver and the community, grounded upon the theory that he was acting only as the sales agent of the mining company, and that the whole of the $15,000 purchase price of the stock sold to Johnson went to the mining company, none of it being retained by Pulver or the community. The record before us does not clearly negative the ultimate passing of the whole of the $15,000 purchase price of the stock to the mining company, and Pulver testifies that it did all pass to the mining company. But the record clearly affirmatively shows an adjudication that the $15,000 purchase price of the stock was ob-

tained from Johnson by Pulver acting for himself and the community, though apparently as sales agent for the mining company, by false representations made by Pulver to Johnson. This, we are of the opinion, is enough to make Pulver and the community liable in damages as for obtaining the money by false representations, within the meaning of § 35, above quoted. *State v. Mendenhall,* 24 Wash. 12, 63 Pac. 1109; *State v. Hooker,* 99 Wash. 661, 170 Pac. 374; *Commonwealth v. Langley,* 169 Mass. 89, 47 N. E. 511; *In re Dunfee,* 219 N. Y. 188, 114 N. E. 52; *Levy v. Industrial Finance Corporation,* 16 Fed. (2d) 769.

[3] It is contended in behalf of Pulver and the community that Johnson is now estopped from asserting the non-dischargeable nature of the liability evidenced by the $15,000 judgment rendered against Pulver and the community, because of his election to seek revocation of their general bankruptcy discharge awarded by the Federal court. The argument is, in substance, that Johnson, in his application for revocation of the discharge having alleged that his claim "would be affected by the discharge of the bankrupts," thereby irrevocably elected to treat his claim as one dischargeable in bankruptcy. We think there is, at least, one conclusive answer to this contention, and that is, that the attempted remedy by revocation of the general bankruptcy discharge of Pulver and the community was nothing more than a mistaken remedy which, in law, did not exist in favor of Johnson, as the order of its dismissal rendered by the Federal court and § 33, above quoted, plainly evidence. Invoking a claimed remedy, which is not in law available, is not an election of a remedy precluding thereafter the invoking of a remedy which is in law available. *Roy v. Vaughan,* 100 Wash. 345, 170 Pac. 1019; *Harris v. Northwest Motor Co.,* 116 Wash. 412, 199 Pac. 992;

*Warren v. Sheane Auto Co.,* 118 Wash. 213, 203 Pac. 372; *Friend v. Talcott,* 228 U. S. 27. It has been held, and we think correctly, that § 33, above quoted, giving to a creditor the right to seek revocation of the discharge of a bankrupt within one year after the discharge shall have been granted, is not a mere statute of limitation, but is a statute going to the very existence and life of the right to seek revocation of the discharge of the bankrupt. *In re Howard,* 201 Fed. 577; *In re Weintrob,* 263 Fed. 904; 1 Collier on Bankruptcy (13th ed.) p. 577.

[4] Contention is made in behalf of Mrs. Pulver and the community that the community, in any event, was discharged of the liability evidenced by the $15,-000 judgment, because whatever false representations were made constituting the basis of that judgment were made by Pulver personally, and hence the community not rendered liable in the sense that there was thereby created as against the community a liability as for its obtaining property by false representations. Plainly, we think the agency of a husband in the management of the business affairs of the community is at least equal in authority to that of a partner managing the business affairs of a partnership, and it has been held, in substance, that the non-dischargeability of a liability is the same with reference to the liability of a partnership as of a partner who created the liability by false representations looking to the profit of the partnership. *Strang v. Bradner,* 114 U. S. 555. This is not a case presenting a question of Mrs. Pulver's personal discharge. Nor is it a case to be viewed analogous to a question of personal discharge of a partner apart from his interest in partnership property, as seems to have been drawn in question in *Frank v. Michigan Paper Co.,* 179 Fed. 776; 30 L. R. A. (N. S.) 623.

It seems to us to follow that, under the circumstances here appearing, the community is liable in the same degree that Pulver himself is liable, and that, in legal effect, his false representations creating the liability were the false representations of the community, and hence the liability is not dischargeable in bankruptcy as to either him or the community. It may be that, were this a dischargeable community obligation, Mrs. Pulver would not be subject to examination. We have made these observations leading us' to conclude that the community was not discharged of this liability, by the general bankruptcy discharge, to the end that it be made plain that, at all events, Mrs. Pulver is subject to examination in the supplemental proceedings the same as Mr. Pulver is subject to such examination.

We conclude that the $15,000 judgment rendered in favor of Johnson and against Pulver and the community is unaffected by the general bankruptcy discharge, and that therefore the superior court had jurisdiction to proceed as it was proceeding in the supplemental proceedings, and that therefore both Mr. and Mrs. Pulver are subject to examination in such supplemental proceedings. The orders of contempt rendered against them are affirmed.

MITCHELL, MAIN, and FRENCH, JJ., concur.

FULLERTON, J. (dissenting)—It is my opinion that the debt evidenced by the judgment was discharged by the proceedings in bankruptcy. I therefore dissent from the conclusion reached by the majority.