**In re James Michael ALLMAN and Leslie Trent Allman, Debtors.**

**HYMAN WHOLESALE CORPORATION, Plaintiff,**

v.

**James Michael ALLMAN, Defendant.**

Bankruptcy No. 91–23191–T.
Adv. Pro. No. 91–2172–T.

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

March 30, 1992.

Samuel R. Brown, II, Epps and Brown, Virginia Beach, Va.

Carolyn L. Camardo, Marcus, Santoro & Kozak, Portsmouth, Va., for debtor.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

On February 6, 1992, trial was held in this adversary proceeding on the plaintiff's complaint to determine dischargeability of debt pursuant to § 523 of the Bankruptcy Code. At that time the court took the matter under advisement and allowed both sides to submit written memoranda in support of their positions. For the reasons stated below, I have decided to rule in favor of the plaintiff and will order that the debt owed to Hyman Wholesale Corporation be excepted from discharge pursuant to Bankruptcy Code §§ 523(a)(2)(A) and (a)(4).

### *Facts*

The debtor James M. Allman owned and operated a used car dealership known as Allman Cars. In the course of his business, the debtor entered into a "floor plan" arrangement with the plaintiff Hyman Wholesale Corporation, Inc., ("Hyman") whereby Hyman was to provide the debtor with financing for the acquisition of used motor vehicles for resale. Pursuant to the agreement, titles to the purchased vehicles were held by and in the name of Hyman Wholesale Corporation. Upon resale debtor agreed to hold the proceeds in trust pending their delivery to Hyman and reassignment of the title.

Beginning in March of 1991, the debtor sold or otherwise disposed of a great number of Hyman's vehicles without delivering proceeds or retitling in the purchasers' names. The evidence shows that debtor obtained financing for twelve of these vehicles by delivering title to Hyman at a time when Allman Cars had already resold the vehicles to consumers. Plaintiff first became suspicious when at least four of the vehicles were not found on the debtor's lot during a regular inventory inspection. At that time, debtor made assurances that funds were forthcoming and that any delay was a result of the routine course of business. However, a subsequent inspection just two weeks later revealed that several more cars were missing. In all, a total of thirty-three cars left debtor's control without any payment of proceeds to Hyman. The proceeds of twenty-nine of those vehicles are at issue before the court.

Allman filed a chapter 7 bankruptcy petition on May 31, 1991, and on July 25 of that year Hyman commenced this adversary proceeding seeking to have the debt determined nondischargeable pursuant to Bankruptcy Code §§ 523(a)(2)(A) and (a)(4).[1] Plaintiff contends that the debtor's conduct amounts to "actual fraud" and "embezzlement" as these terms are used within the context of the Bankruptcy Code.

### Discussion and Conclusions
### Section 523(a)(2)(A)

■ Section 523(a)(2)(A) excepts from discharge any debt obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;...." In order to support a finding of fraud under § 523(a)(2)(A) the plaintiff must establish by a preponderance of the evidence:[2]

(1) That the debtor obtained money, property, services, or an extension, renewal, or refinancing of credit;

(2) That the debtor made misrepresentations;

(3) That at the time the debtor knew the representations were false;

(4) That the debtor made the misrepresentations with the intention and purpose of deceiving the plaintiff;

(5) That the plaintiff relied on the representations; and

(6) That the plaintiff sustained loss and damage as the proximate result of the misrepresentations.

See In re Basham, 106 B.R. 453, 457 (Bankr.E.D.Va.1989) (citing Sweet v. Ritter Finance Co., 263 F.Supp. 540, 543 (W.D.Va.1967)).

"Since the court seldom has direct insight into the heart and mind of a perpetrator of fraud, the question of intent must usually be resolved by an examination of surrounding circumstances." In re Basham, at 457 (citing In re Roberts, 82 B.R. 179, 184 (Bkrtcy.D.Mass.1987)).

■ The money obtained by debtor from the plaintiff can be separated into two categories. Seventeen of the vehicles in question were still in the debtor's possession when he delivered title to Hyman. As to these cars, the plaintiff failed to meet its burden of proving that the debtor possessed a present intent to deceive at the time he obtained the financing. To the contrary, the history between the parties suggests that the debtor still intended to deliver the future sale proceeds at the time he received financing and gave plaintiff the title certificates. For this reason the court dismissed the § 523(a)(2)(A) cause of action as to these funds from the bench at trial.

---

1. It should be noted that this case may well have been argued and decided under § 523(a)(6) which excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." Much of the case law involving "floor plan" financing is framed within this exception. Those cases would seem to support a finding of nondischargeability on the facts of this case. See, e.g. Chrysler Credit Corp. v. Re-
bhan, 842 F.2d 1257 (11th Cir.1988); In re Jim M. and Anne B. James, 124 B.R. 614 (Bankr. M.D.Fla.1991); In re Higginbotham, 117 B.R. 211 (Bankr.E.D.Va.1990). Nevertheless, the court will not base its decision on this subsection since it was not addressed at trial.

2. Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ The amount debtor obtained for the remaining twelve vehicles presents a different story. Although Allman Cars had already sold these vehicles debtor used their titles to obtain additional funds at the plaintiff's expense. Hyman justifiably believed that the cars were in the debtor's possession when he tendered the checks. Debtor's intent to deceive may be clearly inferred from his actions.

■ Debtor's counsel argues that because the actual transactions at issue in this case were carried out by employees of Allman Cars, the plaintiff could not show that debtor himself possessed the requisite fraudulent intent. However, it is well established that a debtor who has made no false representations may, nevertheless, be bound by the fraud of an agent acting within the scope of the debtor's authority. 3 *Collier on Bankruptcy* 523.08[4] at 57 (15th ed. 1991) (citing *In re Maloof*, 2 F.2d 373 (N.D.Ga.1924); *In re Pulver*, 146 Wash. 597, 264 P. 406 (1928); *National Bank of North America v. Newmark*, 20 B.R. 842 (Bankr.E.D.N.Y.1982)). Accordingly, the court finds that the amount owed the plaintiff for these twelve cars (approximately $32,200) is nondischargeable under § 523(a)(2)(A).

*Section 523(a)(4)*

Although the court dismissed the plaintiff's § 523(a)(2)(A) claim as to the amount owed for seventeen of the vehicles, § 523(a)(4) mandates that the entire debt of debtor to Hyman be determined nondischargeable. Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Plaintiff argues that the debtor's actions constitute embezzlement.

Embezzlement under § 523 has been defined as the "fraudulent appropriation of property by a person to whom such property has been lawfully entrusted or into whose hands it has lawfully come." *Moore v. United States*, 160 U.S. 268, 16 S.Ct. 294, 40 L.Ed. 422 (1895); *In re Myers*, 52 B.R. 901 (Bankr.E.D.Va.1985); 3 *Collier on Bankruptcy* 523.14[3] at 113 (15th ed. 1991).

■ In order to prevail, the plaintiff must establish that the debtor's appropriation of the funds was with fraudulent intent. "Even where a case might imply some form of trust by virtue of a debtor holding funds for another, the debtor's subsequent appropriation of the funds will not amount to an embezzlement absent proof of the debtor's fraudulent intent." *In re Myers, supra* at 905 (citing *Matter of Storms*, 28 B.R. 761, 765 (Bankr.E.D.N.C. 1983)). However, intent may be inferred from the debtor's actions and surrounding circumstances. *In re Bevilacqua*, 53 B.R. 331, 334 (Bankr.S.D.N.Y.1985).

■ The evidence here supports a finding of embezzlement. Pursuant to the agreement between the parties, the plaintiff was clearly entitled to the proceeds of the vehicle sales. Debtor was to hold those proceeds *"in trust,"* to be delivered to Hyman.[3] Moreover, the plaintiff further demonstrated its ownership by actually holding titles to the vehicles. The debtor knew that the only monitoring procedure employed by the plaintiff was its periodic inspections of the Allman Cars lot.

Debtor sold these vehicles to consumers and pocketed the proceeds without ever remitting payment to Hyman. As a result the plaintiff was left holding titles to cars which were no longer on debtor's lot while consumers drove vehicles without proper title. These circumstances, along with the

---

**3.** Plaintiff's counsel declined to argue that the debtor committed "defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). Counsel stated that this court has ruled in a previous case that the "form contract" used by this creditor did not create a fiduciary relationship. The court is without recollection of its earlier ruling nor of the specific facts of that case and holds open the possibility that a fiduciary relationship is established where a contract expressly refers to a party holding funds "in trust." In any event, I do not decide the present case on these grounds. The express trust language of the contract is emphasized here only to demonstrate the parties' understanding of their rights and obligations under the arrangement.

debtor's false assurances to the plaintiff at the time of the initial inspection, give rise to an inference of fraudulent intent.

Much has been made by counsel for both parties about the use of the proceeds by the debtor. While it is true that many cases distinguish a finding of embezzlement on whether the funds were used in the normal course of the debtor's business or were used personally by the debtor, the court finds such a distinction inapplicable in the present case. Where a creditor holds legal title to goods and a written agreement has been executed between the parties, which establishes a clear obligation on the part of the debtor to hold proceeds in trust, that creditor is entitled to rely on the contract. Debtor urges that the written agreement was not an accurate description of the existing relationship between the parties and cites *In re Rigsby*, 18 B.R. 518 (Bankr.E.D.Va.1982) for the proposition that the actions of the parties refute contrary written argument. Unlike *Rigsby*, the actions of the parties in the present case are not so inconsistent as to refute the express agreement.

The debtor's subsequent misappropriation of proceeds shall be considered embezzlement under the federal definition. For the reasons stated above the court finds the entire debt excepted from discharge pursuant to § 523(a)(4).