**In re Ross David CONTELLA, Debtor.**

**DEERE & COMPANY, doing business as The John Deere Company, Plaintiff,**

v.

**Ross David CONTELLA, Defendant.**

Bankruptcy No. 93–10983 B.
Adv. No. 93–1149 B.

United States Bankruptcy Court,
W.D. New York.

April 14, 1994.

---

Lawrence G. Reinhold, Pittsford, NY, for plaintiff.

Ross David Contella, debtor, pro se.

CARL L. BUCKI, Bankruptcy Judge.

On this motion for summary judgment, the issue presented to the Court is whether a consumer-debtor's conversion of proceeds from the sale of secured assets gives rise to a liability that is *per se* nondischargeable.

Ross David Contella, the debtor herein, purchased a John Deere lawn and garden tractor, together with various accessories, on August 28, 1989. At the time of purchase, Mr. Contella executed a retail installment security agreement whereby he granted to the seller a purchase money security interest in the equipment. Because the collateral consisted of consumer goods, New York law did not require perfection by means of a UCC–1 filing. N.Y. U.C.C. § 9–302(1)(d). Approximately two weeks after the purchase, the seller assigned its lien to Deere & Company, the moving party herein. Thereafter, without the consent or knowledge of the secured creditor, on a date not stated in plaintiff's moving papers, Mr. Contella sold the collateral for value. Although he claims to have continued for some time to pay on account of his indebtedness, Mr. Contella neglected to remit the entire proceeds of sale to Deere & Company. Then, on March 31, 1993, he filed a petition for relief under Chapter 7 of the Bankruptcy Code. This Court issued its order of discharge on July 8, 1993.

Deere & Company commenced the present adversary proceeding under section 523 of the Bankruptcy Code to obtain a determination that its claim is nondischargeable. Specifically, it alleged under subdivision (a)(6) of this section that the debtor inflicted a willful and malicious injury to the property interests of Deere & Company. Alternatively, it asserted that the liability arises out of an embezzlement, as described in subdivision (a)(4) of section 523. In addition, Deere & Compa-

ny sought a writ of replevin to permit its recovery of the collateral. Upon the statement of facts as set forth above, Deere & Company now moves for summary judgment.

*Willful and Malicious Injury*

Section 523(a)(6) of the Bankruptcy Code provides that an order of discharge does not discharge an individual debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." Key to this exception are the concepts of willfulness and malice. Plaintiff is entitled to summary judgment only if there is no issue of material fact as to both of these requirements. Fed.R.Bankr.P. 7056(c), *In re Kaufmann*, 57 B.R. 644, 647 (Bkrtcy.E.D.Wis.1986). The very nature of willfulness and malice indicates that this exception to discharge applies only to exceptional situations and not to ordinary ones. The concept of willfulness requires not merely an intent to commit the wrongful act but an actual intent to inflict the resulting injury upon the affected creditor. 3 Collier on Bankruptcy ¶ 523.16[1] 523–129 (15th ed. 1979). Malice requires conduct that is not merely tortious, but which is also wrongful and without just cause or excuse. *Id.*

The debtor appears not to dispute that Deere & Company possesses a valid unsecured claim. When viewed most favorably to the debtor, however, the present facts do not establish willful and malicious conduct. At most, they may indicate that the debtor intentionally violated the terms of a security agreement. Such action, while clearly the basis for a claim, does not, without more, entitle the creditor to a determination of nondischargeability under section 523(a)(6). *See In re Phillips*, 882 F.2d 302, 305 (8th Cir. 1989).

Section 523(a)(6) derives from section 17 of the Bankruptcy Act and more specifically, from the 1903 amendments to that section. Act of Feb. 5, 1903, ch. 487, 32 Stat. 797, 798, § 5 [later codified as 11 U.S.C. § 35(a)(8)]. Interpreting the similar language of section 17, the Supreme Court has previously ruled on the issue now before this Court. In *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55

S.Ct. 151, 79 L.Ed. 393 (1934), Justice Cardozo concluded that an intentional misapplication of sale proceeds did not necessarily constitute willful and malicious conduct.

"There is no doubt that an act of conversion, if wilful and malicious, is an injury to property within the scope of this exception.... But a wilful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without wilfulness or malice.... There may be an honest, but mistaken belief, engendered by a course of dealing, that powers have been enlarged or incapacities removed. In these and like cases, what is done is a tort, but not a wilful and malicious one."

293 U.S. at 332, 55 S.Ct. at 153.

Inasmuch as the applicable provisions of section 17 of the Bankruptcy Act are essentially the same as those contained in section 523(a)(6),[1] this Court is bound to follow the instruction of Justice Cardozo.[2] Deere & Company has established only that a debtor pocketed the proceeds received from the sale of collateral subject to a security interest. It has not demonstrated unequivocally that the debtor's conduct was also willful and malicious. To the contrary, the debtor asserts that he never intended to harm his creditor and that he continued payments to Deere & Company even after he had sold the collateral. Nothing in this decision forecloses Deere & Company from offering specific proof at trial regarding the debtor's intent and state of mind.[3] On this motion for summary judgment, however, Deere & Company must demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Because the debtor's willfulness and malice remain issues in dispute, this Court must deny the motion of Deere & Company with respect to its claim under section 523(a)(6).

■ Deere & Company has urged this Court to adopt the reasoning in a line of cases, chiefly from the Ninth Circuit, which would infer willfulness and malice from the wrongful conversion of property, without proof of a specific intent to injure.[4] This Court believes that such an inference is inappropriate, because conversion, even if wrongful, provides no greater indication of malice and willfulness as opposed to an absence of these factors. Even if this Court were to recognize such an inference,[5] however, that inference *alone* does not suffice as a basis for summary judgment.

"An inference is a factual conclusion that can rationally be drawn from other facts."[6] For an inference to arise, there must exist some basis to conclude that the occurrence of fact "A" indicates and supports the occurrence of fact "B". That basis necessarily derives from rules of probability.[7] Based on the realm of human experience, does the presence of a particular fact make a second fact more probable than not? In the present case, Deere & Company argues that one must infer willful and malicious conduct from the deliberate sale of collateral in violation of a security agreement. This Court cannot agree. While it is possible that the debtor

---

1. As interpreted by the Court in *Davis v. Aetna Acceptance Co.,* section 17 of the Bankruptcy Act denied discharge for "liabilities for ... wilful and malicious injuries to the person or property of another." Section 523(a)(6) of the current Code denies discharge "for willful and malicious injury by the debtor to another entity or to property of another entity."

2. *See* 3 Collier on Bankruptcy ¶ 523.16[3] 523–136 (15th ed. 1979).

3. This Court is not unmindful of the difficult challenge of proof that it now imposes upon the secured creditor. Mere difficulty of proof, however, cannot serve as grounds for summary judgment.

4. See *In re Littleton,* 942 F.2d 551 (9th Cir.1991), *In re Cecchini,* 780 F.2d 1440 (9th Cir.1986), *In re Itule,* 114 B.R. 206 (9th Cir. BAP 1990).

5. The Court reserves to trial the consideration of what measure of specific proof might create an inference of malice and willfulness.

6. C. Fishman, Jones on Evidence, Civil and Criminal § 4:1 (7th Edition 1992), at page 299.

7. *See* 1A Wigmore on Evidence § 37.4, at 1033–34 (Tillers rev. 1983).

acted willfully and with malice, a contrary conclusion is at least equally probable. The debtor may have misunderstood his obligations under the security agreement.[8] He might have acted under a belief that those obligations were waived, or that any breach would be cured through his timely payment of the loan as it would otherwise have become due. Even if the debtor appreciated the character of his contractual breach, he might have intended in good faith to pay the secured creditor over time.

No inference can be drawn in the absence of sufficient probability. Rather, in this instance, the creditor must establish, through specific proof, that the debtor's conduct was willful and malicious.

■ By their very nature, inferences are permissive and not mandatory.[9] As such, their application is particularly inappropriate in the context of a motion for summary judgment. Even if this Court were willing to acknowledge that it could infer willfulness and malice from the debtor's sale of collateral, the Court as fact finder remains free to reject that inference. In the present instance, the debtor asserts his good faith and that his post-sale payments to the creditor indicate an absence of willfulness or malice.[10] When a party presents a reasonable basis for rejection of an inference, it would be inappropriate to grant summary judgment based only on that inference.

### Embezzlement

■ Section 523(a)(4) of the Bankruptcy Code provides that an order of discharge does not discharge an individual debtor from an obligation "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Without citing any convincing authority, Deere & Company contends that the debtor's sale of collateral and the subsequent use of its proceeds constituted acts of embezzlement.

Although not specifically defined in the Bankruptcy Code, embezzlement is a concept that is well established in case law. The Supreme Court set forth a basic definition in 1895 in its decision in *Moore v. United States*, 160 U.S. 268, 16 S.Ct. 294, 40 L.Ed. 422 (1895). Embezzlement, it said, "is the fraudulent appropriation of property by a person to whom such property has been intrusted or into whose hands it has lawfully come." *Id.* at 269, 16 S.Ct. at 295. In the present instance, plaintiff fails to establish embezzlement, as so defined, for at least two reasons.

■ Fundamentally, embezzlement involves the appropriation of property belonging to another person or entity. Title to the property here at issue belonged not to plaintiff but to the debtor. Possessing only a lien, Deere & Company was neither the owner nor in possession of the assets. As owner of the collateral, the debtor remained the owner of its proceeds, even though both the collateral and its proceeds were subject to a security interest. No person can embezzle from himself. While Deere & Company may hold an allowable claim based upon the liquidation of collateral and the use of its proceeds, that claim is not in the nature of an embezzlement.

■ Even if the debtor had appropriated assets belonging to Deere & Company, plaintiff fails to establish that that appropriation was fraudulent in nature.[11] Providing no specific proof of fraudulent intent, plaintiff again suggests that the requisite scienter can be inferred from the debtor's conduct. This Court disagrees, for the same reasons that

---

**8.** The probability of an innocent misunderstanding is particularly great when, as here, the debtor is a consumer who presumably executed the security agreement without benefit of counsel.

**9.** C. Fishman, Jones on Evidence, Civil and Criminal § 4.1, at 299 (7th Edition 1992).

**10.** The debtor made these representations orally during the course of argument on the plaintiff's motion for summary judgment. Debtor appeared *pro se*, without benefit of counsel. Al-though the Court would normally have expected the debtor to include these representations into affidavits as contemplated by Fed.R.Civ.P. 56(e), the party's personal statements suffice, in this context of *pro se* representation, to indicate a basis to reject the inference, had the Court been inclined to recognize it.

**11.** *See Savonarola v. Beran,* 79 B.R. 493, 496 (Bkrtcy.N.D.Fla.1987).

preclude an inference of willfulness and malice. The debtor's conduct is fully consistent with an absence of fraud. Indeed, he alleged the continued payment on account of his obligation even after the sale of the collateral. This Court simply cannot infer fraudulent intent from conduct that is equally susceptible to a more innocent interpretation. When fraud is at issue, summary judgment is appropriate only when specific proof unequivocally establishes the necessary intent.

### Replevin

■ Finally, Deere & Company seeks the issuance of a writ of replevin with respect to the collateral which the debtor sold. This request is denied. The purchaser is not a party to the present adversary proceeding. Accordingly, this Court may not adjudicate the rights of that purchaser, who presumably continues to possess the collateral. Having been sold long before the filing of the bankruptcy petition, the collateral is not an asset of this estate. To the extent that Deere & Company wishes to claim that its lien continues to encumber the collateral, it need not seek permission to commence appropriate replevin proceedings in state court against the purchaser.

For the reasons stated herein, the motion of Deere & Company is in all respects denied. Plaintiff's counsel should advise the Court, within two weeks of the entry of this Order, whether his client wishes to withdraw its complaint or to proceed to trial. Because it appears that the parties should have completed their discovery, they may commence new discovery only upon leave of this Court.

So Ordered.