**In re John M. CONDER and Debra A. Conder, Debtors.**

**TRANE FEDERAL CREDIT UNION, Plaintiff,**

**v.**

**John M. CONDER and Debra A. Conder, Defendants.**

Bankruptcy No. 95–21423–7.
Adversary No. A95–2132–7.

United States Bankruptcy Court, W.D. Wisconsin.

Dec. 20, 1995.

Melvyn L. Hoffman, Hoffman, Addis, Pittman & Brandau, La Crosse, WI, for Plaintiff.

Thomas M. Olson, La Crosse, WI, for Defendants.

### MEMORANDUM OPINION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

THOMAS S. UTSCHIG, Bankruptcy Judge.

At the heart of this adversary proceeding is the relationship between the parties and a stolen two-ton flatbed truck. Both the plaintiff and the debtors became involved with this truck, to their mutual sorrow, as it made its way from Kentucky to Wisconsin and back again. The debtors briefly possessed, and believed they owned, the truck; the plaintiff, in turn, loaned the debtors the money to purchase the truck and wanted a security interest in it. The issue before the Court is whether the ultimate disposition of

the truck and its loan proceeds justifies excepting the debtors' obligation to the plaintiff from their discharge pursuant to 11 U.S.C. §§ 523(a)(4) and (a)(6). A trial was held in the matter on November 28, 1995, at which time the Court took the case under advisement to more fully consider the relatively novel legal issues involved. The plaintiff is represented by Melvyn L. Hoffman, of Hoffman, Addis, Pittman & Brandau, while the debtors are represented by Thomas M. Olson.

The tale of this purloined truck began simply enough. The debtor, John Conder, is self-employed during much of the year, and his business apparently involves the selling of certain farm "gates" to Wisconsin farmers. According to Mr. Conder, these gates can only be purchased in Kentucky, and he therefore must deliver the gates from Kentucky to Wisconsin in order to sell them. He needed a large flatbed truck to successfully carry out this business enterprise, and finally found such a vehicle, a 1987 Ford truck, at Weedle–LeFavere Chevrolet in Liberty, Kentucky. The asking price for the vehicle was $9,500.00.

In August of 1994, the debtors applied to the plaintiff for a loan to buy the 1987 truck. The debtors asked that the plaintiff loan them approximately $8,500.00. From this amount, the debtors intended to apply $6,500.00 toward the purchase of the truck. The remaining portion of the loan was to eliminate the outstanding lien on the debtors' existing vehicle, which they would then use as a trade-in on the 1987 truck. The plaintiff agreed to make the loan to the debtors, and admits that after the debtors received the loan, they did exactly what they were supposed to do with the money. After acquiring the truck, Mr. Conder drove it back to Wisconsin and placed it in "winter storage."[1] He testified that he was in no hurry to obtain the title and registration for the vehicle, since he was simply storing it until spring. Although the plaintiff needed the title and registration to perfect its lien, Mr. Conder was apparently under the impression that the plaintiff had a security interest in the truck from the moment they loaned him the money. He testified that until informed to the contrary by the plaintiff, he was unaware that he needed to take any further steps to assist in the recordation or perfection of the security interest.[2]

At some point during the winter, the plaintiff informed the debtors that it needed the title and registration for the truck. Although the plaintiff alleges that its loan officers had to make repeated calls to the debtors regarding the title, it is uncontested that shortly thereafter the debtors did begin their efforts to verify the vehicle identification number on the truck. These efforts took them to the Jackson County Sheriff's Department, the Wisconsin State Patrol, the Wisconsin Department of Motor Vehicles, and ultimately the Wisconsin Department of Transportation. In the end, it was discovered that the vehicle had been stolen before its sale to the debtors.

Upon this unexpected discovery, the vehicle was immediately confiscated by the authorities and apparently returned to the original owner. On February 28, 1995, the debtors contacted the plaintiff and informed a loan officer of the results of the investigation. Mr. Conder also told the plaintiff's loan officer that he intended to return to Kentucky and get his money back. At the same time the debtors applied for another loan from the plaintiff so that they could purchase another truck. Mr. Conder testified that he intended to pay the original loan in full with the refund on the stolen truck,

---

1. Mr. Conder's business is apparently seasonal, and he is unable to haul gates during the winter months.

2. The plaintiff complains that the debtors did not complete and submit the title application which would have perfected its security interest in the truck. According to Billy C. Weedle of Weedle–LeFavere Chevrolet, he gave the title application to the debtors to complete as the truck was to be titled in Wisconsin. Otherwise, the dealership would have completed the application. However, nothing in his testimony, or the testimony of any of the plaintiff's other witnesses, contradicts Mr. Conder's testimony in this regard—namely, that until he was informed otherwise by the plaintiff, he thought the security interest had already attached to the vehicle, and that nothing more needed to be done.

then use the proceeds from the new loan to buy another truck.

Unfortunately, the plaintiff denied the debtors' request for the second loan. The reason for the denial is vague, as is Mr. Conder's assertion at trial that the plaintiff somehow improperly included his payments on the first loan (which were to be paid off by the refund) in their calculation of his financial condition.[3] Regardless, Mr. Conder received the bad news on March 5, 1995, apparently while in Kentucky negotiating a settlement with Weedle–LeFavere Chevrolet. Thereafter, he received $9,250.00 from Weedle–Le-Favere in full satisfaction of any claims he might have regarding the stolen truck. According to the debtors, this sum reflected their original down payment, the value of their trade-in, various repairs they made on the stolen truck, and travel expenses.

Despite having obtained this favorable settlement, the debtors did not use the refund to pay off their loan with the plaintiff. Instead, they used $8,000.00 of the settlement to buy a 1982 Chevrolet two-ton truck. Both sides agree that the debtors did not inform the plaintiff of this turn of events, nor ask its permission for the purchase. Nonetheless, the plaintiff found out about the purchase and demanded title registration and other information about the 1982 truck, so that it could register its security interest in *this* truck. The debtors refused to do so. Mr. Conder testified at trial that his refusal to grant a lien in the new vehicle was based upon his belief that he had been treated unfairly by the plaintiff, and that he thought the plaintiff's lien was simply "gone" because

the first truck—the stolen one—was lost to both of them.[4]

The debtors thereafter used the 1982 truck for collateral when obtaining a $6,400.00 loan from Co–Op Credit Union. The major portion of the proceeds of this loan were used to pay various unsecured creditors of the debtors. Interestingly enough, although they refused to grant the plaintiff a lien in the 1982 truck, they did make the monthly payments on the loan in March and April of 1995. After that, they filed bankruptcy, and now seek to discharge their debt to the plaintiff, which presently totals $8,276.56. The plaintiff contends that their use of the loan proceeds constitutes embezzlement under 11 U.S.C. § 523(a)(4) or a willful and malicious injury to the plaintiff's property interests under 11 U.S.C. § 523(a)(6), thus precluding the discharge of the debt.

In response to the plaintiff's allegations, the debtors have offered a multi-layered defense based upon their interpretation of the law of secured transactions. First, they contend that the involuntary confiscation of the stolen truck "severed" the plaintiff's security interest, and that the money they received was a "settlement," not the proceeds of any disposition of the plaintiff's collateral. Second, they claim that the plaintiff "waived" its security interest by failing to call the original note immediately due and payable upon discovering that the vehicle was stolen. Third, they argue that the plaintiff's lien continues in the item acquired with the refund—namely, the second truck. Accordingly, the debtors suggest that the plaintiff's interest in the

---

**3.** There was some testimony which would indicate that the denial was based, at least in part, on the difficulties the plaintiff experienced with the debtors. For example, while the debtors had the truck in winter storage, they purchased only fire and theft insurance for the vehicle, as opposed to the full coverage the plaintiff believed to be required by the loan documents. As a result, the plaintiff added a $1,200.00 insurance policy premium to the loan balance, an amount removed from the loan balance only after the parties discovered that the truck had been stolen. Additionally, the plaintiff's loan officers testified that there had been some difficulty with delinquent payments.

**4.** Mr. Conder's statement at trial was that "as I didn't have a truck, they didn't have a truck." While perhaps not the most articulate expression of a legal concept, this statement clearly demonstrates his opinion and belief at the time he received the refund or settlement from Weedle–LeFavere Chevrolet. Even the testimony of the plaintiff's collection officer, Lucille Finch, fails to contradict Mr. Conder's statements about his opinion regarding the validity of the plaintiff's lien. She testified that in telephone conversations, Mr. Conder stated that the plaintiff would get nothing more than the monthly payments on the loan because he had not received the second loan.

second truck may be superior to that of the competing creditor.[5]

Intriguing as these issues may be, any examination of their merits would amount to little more than an academic discussion, as they are irrelevant to a determination of the matter now before the Court. The Court must determine whether the debtors' disposition of the loan proceeds justifies excepting the debt in question from their discharge. The fact that the plaintiff may have a tenuous claim to collateral which has been pledged to another creditor does not address the plaintiff's claim that the debtors either embezzled its money or willfully and maliciously injured its property interests. Further, this Court cannot and will not adjudicate the plaintiff's rights to the second truck when the competing claimant is not a party to the proceeding. *See In re Contella,* 166 B.R. 26, 31 (Bankr.W.D.N.Y.1995) (bankruptcy court cannot adjudicate creditor's right to vehicle sold in violation of security agreement when purchaser is not party to action).

 Instead, the Court must examine the facts to determine whether they satisfy the requirements of the exceptions to discharge pled by the plaintiff. First, the plaintiff contends that the debtors "embezzled" the loan proceeds. 11 U.S.C. § 523(a)(4) provides that a debtor may not receive a discharge of any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Embezzlement is usually defined as the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come. *Matter of Weber,* 892 F.2d 534, 538 (7th Cir.1989); *In re Gumieny,* 8 B.R. 602, 605 (Bankr.E.D.Wis. 1981) *see also Contella,* 166 B.R. at 30; *In re Blanton,* 149 B.R. 393, 394 (Bankr.E.D.Va. 1992); *In re Allman,* 147 B.R. 122, 125 (Bankr.E.D.Va.1992).

 Generally speaking, to demonstrate embezzlement the creditor must prove that specific property was entrusted to the debtor, the debtor appropriated that property for a use other than that for which it was intended, and the debtor acted with fraudulent intent. *Weber,* 892 F.2d at 538; *In re Belfry,* 862 F.2d 661, 662 (8th Cir.1988); *In re Kressner,* 155 B.R. 68, 74 (Bankr.S.D.N.Y. 1993); *In re Rigsby,* 152 B.R. 776, 778 (Bankr.M.D.Fla.1993). Fraudulent intent may be demonstrated by reference to the surrounding circumstances, but those circumstances must evidence that the debtor committed fraud in fact, involving moral turpitude or intentional wrongdoing, rather than implied or constructive fraud. *Gumieny,* 8 B.R. at 605. Thus, even if the plaintiff is able to prove that the debtors misappropriated funds for their own purposes, the plaintiff cannot succeed on its embezzlement claim unless it also demonstrates that they acted with fraudulent intent.[6] *Kressner,* 155 B.R. at 74; *Rigsby,* 152 B.R. at 778. As the court stated in *In re Davis,* 155 B.R. 123, 130 (Bankr.E.D.Va.1993):

> [E]ven where a relationship might imply some form of trust by virtue of a debtor holding funds for another, the debtor's subsequent appropriation of the funds will not amount to embezzlement absent proof of the debtor's fraudulent intent.

In the present case, the plaintiff argues that it "entrusted" the loan proceeds to the debtor, and expected the debtor to obtain a vehicle in which it would have a lien. Leaving aside any issue of the trust actually placed in the debtors, the fact remains that they did not misappropriate the original loan proceeds. The debtors bought the 1987 truck, just as the parties envisioned. Neither side expected that the truck was actually stolen property, and neither is to blame for the resulting difficulties regarding title. The plaintiff offered no evidence that the

---

**5.** The debtors suggest that the plaintiff's only recourse in this matter is to pursue its potential lien rights in the second truck. However, the debtors' contention in this regard is suspect. Since the plaintiff's security interest in the first truck was apparently never perfected, it is unclear whether the plaintiff has any claim to the proceeds of its disposition. For the reasons that

follow, the Court need not address this conceptual difficulty.

**6.** The burden of proof in this case rests squarely upon the plaintiff, who must prove its allegations by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *see also Allman,* 147 B.R. at 124.

debtors acted with any fraudulent intent when they acquired the vehicle. Although the plaintiff complains that the debtors did not immediately complete the title application for the vehicle, the debtors offered a valid explanation for this lapse—they did not realize they needed to complete the form to secure the plaintiff's lien. The plaintiff offered no testimony to rebut this explanation, nor was there any indication that the debtors were informed of the need to complete the title application until the plaintiff's representatives contacted them *after* the vehicle was stored in Wisconsin.

Thus, to the extent that the plaintiff's claim stems from the debtors' conduct in acquiring the vehicle and pursing registration of it, the claim must fail. There is neither a misappropriation nor any fraudulent intent, as is required to demonstrate embezzlement under § 523(a)(4). *Weber,* 892 F.2d at 538; *Belfry,* 862 F.2d at 662. Although the debtors may have been dilatory, or even negligent, in obtaining the vehicle identification number or in preparing the title application concerning the truck, the Court finds their actions completely lacking in the requisite fraudulent intent. It appears they did as well as many unrepresented consumers would have done in similar circumstances.

■ Next, the Court must consider the debtors' actions when they received the "refund" from Weedle–LaFavere Chevrolet.[7] In truth, this is the only period of time in which their actions could in any manner be considered questionable. Prior to the issuance of the refund, they acted consistently with their stated purpose of obtaining a loan to buy the truck. Once they received the refund and learned that the plaintiff had refused to extend them further credit, they chose not to remit the refund amount to the plaintiff. They also refused to grant the plaintiff a lien in the vehicle they bought with the refund. The issue is whether these actions constitute embezzlement. In this regard, the plaintiff contends that by purchas-

ing another truck, concealing that purchase, and refusing to grant the plaintiff a lien in that new vehicle, there is sufficient evidence of fraudulent intent.

■ The problem is that the plaintiff was not the owner of the refund. Fundamentally, embezzlement involves the appropriation of property *belonging to another person or entity. Contella,* 166 B.R. at 30. As a basic principle, therefore, one cannot embezzle one's own property. *Davis,* 155 B.R. at 131. The plaintiff appears to concede that once the debtors bought the truck with the loan proceeds, the plaintiff possessed nothing more than a security interest in a vehicle owned by another. Where a creditor holds nothing more than a security interest in a debtor's property, the relationship is insufficient to support a finding of embezzlement. As the court stated in *In re Heath,* 114 B.R. 310, 311–12 (Bankr.N.D.Ga.1990):

> [E]mbezzlement involves the appropriation or conversion of another's property where the property was legally in the offending party's possession. Here, it is undisputed that the [collateral was] owned by defendant subject to plaintiff's security interest. Defendant was in lawful possession of the [collateral] and plaintiff's security interest does not give plaintiff an absolute ownership interest nor does it defeat defendant's ownership interest. Since the property at issue belonged to defendant and was not property of another, the debt here could not be for ... embezzlement.

*See also Contella,* 166 B.R. at 30; *Rigsby,* 152 B.R. at 778–79; *In re Storms,* 28 B.R. 761, 765 (Bankr.E.D.N.C.1983).

The plaintiff neither owned nor possessed the 1987 truck which was to serve as its collateral. As the owner of the collateral, the debtor remained the owner of its proceeds, even though both the collateral and its proceeds were subject to a security interest. *Contella,* 166 B.R. at 30. As such, the debtors could not embezzle from themselves, and the alleged conversion of the refund does not

---

**7.** There was considerable debate between the parties as to whether the $9,250.00 which the debtors received from Weedle–LaFavere constituted a "refund" or a "settlement." It is unnec-

essary to unravel this legal conundrum to resolve the case, as the Court can in fact presume that the payment was a "refund" without altering the outcome.

amount to embezzlement. *Id.; see also Davis,* 155 B.R. at 131.

▪ Furthermore, the plaintiff failed to demonstrate any fraudulent intent. Although the debtors did refuse to grant it a lien in the second vehicle, their actions and their testimony evidence nothing more than justifiable confusion over the respective rights of the parties. Mr. Conder testified that he believed the plaintiff's lien was "gone." His statement regarding his belief at the time is uncontroverted and does not evidence fraudulent intent. His good faith is to some extent demonstrated by the fact that he made subsequent payments, albeit for only a couple of months. Presupposing for a moment that the debtors did misappropriate or convert the refund in some fashion, there was insufficient evidence of any fraudulent intent on the debtors' part, and the claim of embezzlement must fail for this reason as well. *Id.* at 130; *Kressner,* 155 B.R. at 74; *Rigsby,* 152 B.R. at 778.

▪ The plaintiff also argues that the debtors' actions constituted willful and malicious injury to its property rights. In essence, it argues that by refusing to grant it a lien on the second truck, and instead using that truck for collateral with the Co–Op Credit Union, the debtors knowingly and intentionally acted to deprive the plaintiff of its "expectation of having a lien on a vehicle." [8] 11 U.S.C. § 523(a)(6) provides that a debtor may not discharge a debt to the extent it is "for willful and malicious injury by the debtor to another entity or to the property of another entity."

▪ Injury under § 523(a)(6) includes common law conversion, or the "wrongful exercise of dominion or control over chattel." *In re Cilek,* 115 B.R. 974, 998 (Bankr. W.D.Wis.1990) (*quoting Production Credit Assn. of Madison v. Nowatzski,* 90 Wis.2d 344, 353, 280 N.W.2d 118 (1979)); *see also In re Kimzey,* 761 F.2d 421, 424 (7th Cir.1985)

(willful and malicious conversion is nondischargeable). Although there is disagreement over exactly what a plaintiff must prove, the courts do generally agree that a debtor's conversion or sale of collateral is subject to scrutiny under 11 U.S.C. § 523(a)(6). Still, as the court stated in *In re Long,* 774 F.2d 875, 882 (8th Cir.1985):

> Debtors who willfully break security agreements are testing the outer bounds of their right to a fresh start, but unless they act with malice by intending or fully expecting to harm the economic interests of the creditor, such a breach of contract does not, in and of itself, preclude a discharge.

▪ Instead, the plaintiff must prove that the injury was the result of conduct which was both willful *and* malicious. *In the Matter of Schwenn,* 44 B.R. 746, 748 (Bankr. E.D.Wis.1984). For an act to be willful, it must be intentional or deliberate. *In re Chambers,* 23 B.R. 206 (Bankr.W.D.Wis. 1982); *Matter of Ries,* 22 B.R. 343, 346 (Bankr.W.D.Wis.1982). For an act to be malicious, the intent must be to harm. *In re Noller,* 56 B.R. 36, 38 (Bankr.E.D.Wis.1985). In essence, the debtor must know that his act will harm another and proceed in the face of that knowledge. *Cilek,* 115 B.R. at 998; *see also In the Matter of Cullen,* 71 B.R. 274, 282 (Bankr.W.D.Wis.1987). The plaintiff must therefore show that the debtors knew they would harm it when they used the refund to buy the second truck, and nonetheless proceeded with their plans despite that knowledge.

▪ In truth, the fact that the debtors received the refund on the stolen truck is not the problem; clearly, under the circumstances the plaintiff would have wished them to seek such a refund. Rather, the plaintiff takes issue with their subsequent failure to pay it the refund, or to provide it with a lien in the second truck. This conduct alone does not render the debt nondischargeable. A

---

8. One might debate whether an "expectation" of a lien is a property interest subject to protection under the "willful and malicious injury" exception to discharge. The plaintiff's lien in the stolen truck does not appear to have been perfected. It might be wondered whether there was in fact a property interest subject to conversion

by the debtors. *See Davis,* 155 B.R. at 131 (to succeed under § 523(a)(6), creditor must show an act of dominion or control wrongfully asserted over another's property). For purposes of this opinion alone, the Court will presume that there was some property right which the debtors could conceivably convert.

debtor's mere failure to pay over money received from the disposition of secured property does not show either willfulness or maliciousness. *Cilek*, 115 B.R. at 998. As the court in *Ries* stated:

> [W]hen a defendant has disposed of collateral without permission but with some notion, however erroneous it would appear to be, that he has a right to dispose of it, there can be no finding of willful and malicious conversion.

22 B.R. at 347 (*quoting In re Lewis*, 17 B.R. 46, 48 (Bankr.W.D.Ark.1981)).

The debtors assert that they believed the plaintiff's lien was extinguished when the truck was lost to both parties. Mr. Conder testified that he simply needed a truck, and since the plaintiff denied his request for a loan he used the refund to buy what he needed. Although he refused to grant the plaintiff a lien in this second truck, he says he still intended to pay off the loan. Of course, the debtors' words must be weighed against their deeds. *Cilek*, 115 B.R. at 999. The plaintiff complains that the debtors made only two payments on the loan after receiving the refund. But their financial condition was worsening, and the existence of the payments also supports an inference of the debtors' good faith. Similarly, the fact that they refused to grant the plaintiff the lien in the second truck does not evidence malice; instead, it is consistent with their stated opinion regarding the plaintiff's right to a lien. The Court's ultimate assessment of the debtors' conduct is that while they were caught in an unusual situation, with financial pressures mounting, they did the best they could. Although their opinion concerning the plaintiff's right to the refund on the stolen truck or a lien on the second truck was likely incorrect, the debtors' actions evidence the honesty and consistency of that belief.

In this case, the plaintiff argues that by taking the refund proceeds, purchasing a new truck, and using that truck for collateral, the debtors damaged its security interest, or at least its "expectation" of such an interest. The problem is that the plaintiff has failed to prove that the debtors acted maliciously—that is, with actual knowledge that they would harm the plaintiff. *Cilek*, 115 B.R. at 998. The debtors' testimony was that they believed the plaintiff's lien was "gone" because the first truck had been lost to both parties when it was impounded and returned to Kentucky.[9] While this may be an incorrect statement of law, it is an uncontroverted statement of belief. Indeed, from the perspective of a consumer untrained in the intricacies of legal analysis, it is not an absurd interpretation of the baffling situation presented to the debtors. They acted with the honest, if erroneous, belief that they had the right to dispose of the refund, and the second truck, as they did. *Ries*, 22 B.R. at 347. The plaintiff failed to prove that the debtors acted with the requisite awareness that their actions would cause harm, and thus has failed to prove the existence of a "malicious" injury as required by § 523(a)(6).

Accordingly, the plaintiff's complaint is dismissed. Costs are denied to both sides.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

---

9. Under certain circumstances, a debtor's knowledge that his actions will harm a secured creditor may be inferred from the debtor's experience in business, his concealment of a sale of the collateral, or his admission that he read the security agreement. *Ries*, 22 B.R. at 347; *see also In re Haynes*, 54 B.R. 20, 21 (Bankr. W.D.Wis.1985). However, in the case of an unrepresented consumer the likelihood of an innocent misunderstanding is more likely, and so the use of such presumptions or inferences must be made carefully. *See Contella*, 166 B.R. at 30. In any event, the Court finds that in this case the debtors' explanation for the failure to remit the refund or grant a lien in the second truck is sufficiently plausible to rebut any presumption or inference which might exist.