**In re Lucy Anna DOBEK, Debtor.**

**Bombardier Capital, Inc., Plaintiff,**

**v.**

**Lucy Anna Dobek, Defendant.**

**Bankruptcy No. 00 B 31883.
Adversary No. 01 A 00288.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

May 16, 2002.

---

Cindy M. Johnson, Johnson & Associates, Chicago, IL, for plaintiff.

Paul M. Bach, Des Plaines, IL, for defendant.

### MEMORANDUM OPINION

JACK B. SCHMETTERER,
Bankruptcy Judge.

Plaintiff, Bombardier Capital, Inc. ("Bombardier") filed this adversary proceeding against Lucy Anna Dobek ("Debtor") in relation to her Chapter 7 bankruptcy case. She financed purchase of a motorcycle, and the loan and security rights were assigned by the Seller Pro Source to Bombardier. The Complaint seeks a judgment declaring the debt owed Bombardier by Debtor to be nondischargeable on several theories: Count I alleges under 11 U.S.C. § 523(a)(2)(A) that Debtor obtained credit for the purchase of a motorcycle under false pretenses and through use of a false statement; Count II avers under 11 U.S.C. § 523(a)(4) that the debt arises from Debtor's embezzlement of Bombardier's secured property; Count III alleges that Debtor's debt resulted from willful and malicious injury under § 523(a)(6).

The parties filed Cross Motions for Summary Judgment, with supporting materials and briefs. For reasons stated herein and by separate order, Plaintiff's motion on Count I is granted, Defendant's motion in that Count is denied. The Defendant/Debtor's motion as to Counts II and III of Bombardier's Complaint is allowed, and Bombardier's motion as to Counts II and III is denied. Accordingly, judgment will separately enter in favor of Defendant on Counts II and III, and in favor of Plaintiff on Count I.

## BACKGROUND

### *Local Bankruptcy Rule 402*

Rule 402.M of the Local Bankruptcy Rules requires the party moving for summary judgment to file a detailed statement of material facts that the movant believes are uncontested. Local Bankr.R. 402.M.

The nonmovant must respond to the movant's 402.M statement and set forth any material facts that would require denial of summary judgment, specifically referring to the record for support of each denial of fact. Local Bankr.R. 402.N. "[A]ll material facts set forth in the [402.M] statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Bankr.R. 402.-N(3)(b).

## SUMMARY JUDGMENT STANDARDS

Rule 56 of the Federal Rules of Civil Procedure, made applicable to Adversary proceedings by 7056 Fed.R.Bankr.P., enumerates criteria that the moving party must meet in support of a Motion for Summary Judgment. To prevail, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Ultimately, the movant bears the burden of demonstrating all elements of the cause of action, 508 F.2d 415, 416 (6th Cir.1975), and the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552.

Once the movant meets that burden, the nonmovant must go beyond the pleadings and bring forth specific facts to establish there is a genuine issue for trial. *Matsushita Electric Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In ruling on a motion for summary judgment, uncontradicted evidence of the nonmovant must be accepted and all reasonable inferences drawn in the nonmovant's favor. *See Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, a moving party cannot rely on mere conclusions to support a claim without some supporting probative evidence. *Id.* at 249, 106 S.Ct. 2505.

### Undisputed Facts

Each party has set forth facts in support of their respective motions pursuant to Rule 402.M, and each has responded to the opposing party's statement by filing a response pursuant to Rule 402.N. In addition, the parties jointly filed a set of "Stipulated Facts In Supplement to Each Parties' Statement of Material Facts Pursuant to Local Rules 402(M) and 402(N)." The following undisputed facts were demonstrated by the foregoing materials:

1. On February 7, 2000, Lucy Anna Dobek ("Debtor") signed a Loan Agreement ("Agreement"), agreeing to pay the principal amount of $14,553.52 to Pro Source. Parties' Stipulated Facts at ¶ 4.

2. Exhibit B of the parties' Stipulated Facts is a true and accurate copy of the Agreement. *Id.* at ¶ 5.

3. In exchange for the promise to repay, Pro Source lent Debtor the money under a purchase money security agreement to purchase a 2000 Suzuki motorcycle ("Motorcycle"). *Id.* at ¶ 6.

4. Pro Source sold Debtor the Motorcycle. *Id.* at ¶ 7.

5. The Agreement was assigned for value to Plaintiff, Bombardier Capital, Inc. ("Bombardier"). *Id.* at ¶ 8. There remains due from Defendant on that account $14,178.15. Bombardier 402.M at ¶¶ 2, 3, and 4.

6. Plaintiff, as assignee, has a duly perfected security interest in the Motorcycle. *Id.* at ¶ 9.

7. Exhibit C of the parties' Stipulated Facts is a true and correct copy of the title for the Motorcycle. *Id.* at ¶ 10.

8. Although the name on the title for the Motorcycle lists "Lucy A. Dubek" as the owner, the title reflects a misspelling and the intended owner's name was Lucy A. Dobek. *Id.* at ¶ 11.

9. On the day she purchased the Motorcycle, Debtor initially took possession of it. *Id.* at ¶ 12.

10. Debtor has not, at any time, had a license issued in any state that would allow her to operate a motorcycle. *Id.* at ¶ 13.

11. When Debtor purchased the Motorcycle, she did not intend to obtain a license to drive a motorcycle. *Id.* at ¶ 14.

12. On the next day, Debtor allowed her then boyfriend, Richard Ray, to have possession of the Motorcycle. *Id.* at ¶ 15.

13. Debtor did not intend to keep possession of the Motorcycle when she purchased it. *Id.* at ¶ 16.

14. Debtor purchased the Motorcycle with the intention of giving it to Richard Ray. *Id.* at ¶ 17.

15. Richard Ray told Debtor that he could not put the Motorcycle in his name because he was having credit problems. *Id.* at ¶ 18.

16. When Debtor purchased the Motorcycle she did not intend to make the payments for the loan on the Motorcycle, but, instead, she intended that Richard Ray would make the payments for the loan on the Motorcycle. *Id.* at ¶ 19.

17. When the bills for payment on the Motorcycle came, Debtor believed that Richard Ray paid them. *Id.* at ¶ 20.

18. Although some payments were made on the motorcycle loan, Debtor did not personally make any of those payments. *Id.* at ¶ 21.

19. Debtor was told by Richard Ray that the Motorcycle was either stolen or that the "motor blew up." *Id.* at ¶ 22.

20. Debtor does not know whether Richard Ray's statement that the Motorcycle was either stolen or "blew up" was true. Bombardier's 402.M at ¶ 1.

21. Debtor does not know and has been unable to determine the present whereabouts of the Motorcycle. *Id.* at ¶ 23.

22. Plaintiff modified the automatic stay in Debtor's bankruptcy case to try to repossess the Motorcycle. *Id.* at ¶ 24.

23. In May of 2000, Debtor signed a purchase contract and financing agreement, agreeing to repay a principal amount in excess of $10,318.69 to Conseco Finance. *Id.* at ¶ 25.

24. In exchange for the promise to repay, Conseco Finance lent Debtor the money, under a purchase money security agreement to purchase a second 2000 Suzuki motorcycle ("Second Motorcycle"). *Id.* at ¶ 26.

25. Debtor purchased the Second Motorcycle. *Id.* at ¶ 27.

26. Debtor did not purchase the Second Motorcycle with any other person, and no other person's name appears on the title for the Second Motorcycle. *Id.* at ¶ 28.

27. When Debtor purchased the Second Motorcycle she did not intend to make the purchase for her own use. *Id.* at ¶ 29.

28. Debtor again intended to purchase the Second Motorcycle for Richard Ray. *Id.* at ¶ 30.

29. Richard Ray again told Debtor that he could not put the Second Motorcycle in his name because he was having credit problems. *Id.* at ¶ 31.

30. When Debtor purchased the Second Motorcycle she immediately gave it to Richard Ray. *Id.* at ¶ 32.

31. When Debtor purchased the Second Motorcycle she did not personally intend to make the payments for the loan on the Second Motorcycle, but, instead, she intended that Richard Ray would make the payments for the loan on the Second Motorcycle. *Id.* at ¶ 33.

32. Richard Ray absconded with the Second Motorcycle. *Id.* at ¶ 34.

33. Debtor believes that the Second Motorcycle is in Texas where Richard Ray is incarcerated. *Id.* at ¶ 35.

34. Debtor does not know and is unable to confirm the whereabouts of the Second Motorcycle. *Id.* at ¶ 36.

35. On June 27, 2000, Debtor signed a purchase contract and financing agreement, agreeing to repay the principal amount of $41,927.61 to J.K. Pontiac/GMC, Inc. d/b/a J.K. Nissan, Inc. *Id.* at ¶ 37.

36. In exchange for the promise to repay, J.K. Pontiac/GMC, Inc. d/b/a J.K. Nissan, Inc. lent Debtor the money under a purchase money security agreement to purchase yet a third motorcycle, a 2000 GMC Yukon ("Yukon"). *Id.* at ¶ 38.

37. J.K. Pontiac/GMC, Inc. d/b/a J.K. Nissan, Inc. sold the Yukon to Debtor. *Id.* at ¶ 39.

38. Debtor did not purchase the Yukon with any other person, and to the best of her knowledge no other person's name appears on the title for the Yukon. *Id.* at ¶ 40.

39. When Debtor purchased the Yukon she did not intend to make the purchase for her own use. *Id.* at ¶ 41.

40. Debtor intended to purchase the Yukon for Richard Ray. *Id.* at ¶ 42.

41. Richard Ray again told Debtor that he could not put the Yukon in his name because he was having credit problems. *Id.* at ¶ 43.

42. When Debtor purchased the Yukon after she received possession, she immediately gave it to Richard Ray. *Id.* at ¶ 44.

43. When Debtor purchased the Yukon she did not personally intend to make the payments for the loan on the Yukon, but, instead, she intended that Richard Ray would make the payments for the loan on the Yukon. *Id.* at ¶ 45.

44. Richard Ray absconded with the Yukon. *Id.* at ¶ 46.

45. Richard Ray was arrested in Texas and was in possession of the Yukon. *Id.* at ¶ 47.

46. Debtor was contacted by Texas officials and told to retrieve the Yukon, which she did. *Id.* at ¶ 48.

47. The Yukon has been surrendered to the secured creditor during the course of this bankruptcy case. *Id.* at ¶ 49.

48. Debtor began dating Richard Ray on New Year's Day in 2000. *Id.* at ¶ 50.

49. Debtor lists seven non-furniture store credit card creditors on her Schedule F, to whom she owed at the time of filing, approximately $33,800.00. *Id.* at ¶ 51.

50. Debtor lists two furniture store unsecured creditors on her Schedule F, to whom she owed, at the time of filing, approximately $4,400.00. *Id.* at ¶ 52.

51. Debtor incurred almost all of that debt between January and June of 2000. *Id.* at ¶ 53.

52. Richard Ray had a roommate by the name of Jason Rogers. *Id.* at ¶ 55.

53. The unsecured debts listed on Debtor's Schedule F (with the exception of the utility bills) were all for debts incurred when Debtor purchased items for Richard Ray and Jason Rogers. Debtor's 402.N at ¶ 7.

54. Before Debtor incurred the unsecured schedule debts, Richard Ray asked her to make purchases on her credit cards and at the furniture stores, and he told Debtor that he would give her money every month to make payments on those debts. *Id.* at ¶ 54.

55. Jason Rogers asked Debtor to make purchases of clothing for him on her credit cards, and told her he would make the minimum payments on her credit cards for her. *Id.* at ¶ 56.

56. Jason Rogers never paid Debtor for the items purchased. *Id.* at ¶ 57.

57. Other undisputed facts are set forth in the discussion that follows.

## JURISDICTION

Jurisdiction over this matter lies under 28 U.S.C. § 1334. Determinations of the dischargeability of a debt are core proceedings under 28 U.S.C. § 157(b)(2)(A)(I).

## DISCUSSION

### Count I: Dischargeability Claim under § 523(a)(2)(A) for False Pretenses or False Representation

Bombardier first seeks a declaration that the debt Dobek owes for the financing of the Motorcycle is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). That provision provides that a discharge under Bankruptcy Code Section 727 does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. § 523(a)(2)(A).

In order to except false pretenses or a false representation from discharge, Bombardier must establish the following elements: (1) Dobek obtained funds through representations that she either knew to be false, or made with such reckless disregard for the truth as to constitute willful misrepresentations; (2) Dobek possessed the requisite scienter, i.e., she actually intended to deceive Bombardier; and (3) to its detriment, Bombardier justifiably relied on Dobek's misrepresentations.[1] *Mayer v. Spanel Int'l Ltd. (In re Mayer)*, 51 F.3d 670, 673 (7th Cir.1995), *cert. denied*, 516 U.S. 1008, 116 S.Ct. 563, 133

---

**1.** In addition to false pretenses or false representation, a plaintiff may allege actual fraud under 523(a)(2)(A). *McClellan v. Cantrell*, 217 F.3d 890, 893–94 (7th Cir.2000). Bombardier has neither alleged nor made any argument to the effect that Debtor's conduct constituted in actual fraud. Since Bombardier bears the burden of persuasion to show exception to discharge and because a plaintiff must allege fraud with particularity, an actual fraud analysis is not discussed here. Rule 7009 Fed. R. Bankr.P. (adopting Fed.R.Civ.P. 9(b)).

L.Ed.2d 488 (1995). The burden is on the plaintiff to establish each of these elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 290, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). A failure by Bombardier to establish any required element must result in denial of its motion for summary judgment. *In re Bryant*, 241 B.R. 756, 765 (Bankr.M.D.Fla.1999).

### Material Misrepresentation

■ Bombardier must demonstrate that the Debtor obtained money—or, here, credit—through a material misrepresentation that the Debtor knew at the time to be false, or made with gross negligence as to its truth. *In re Sheridan*, 57 F.3d 627, 635–36 (7th Cir.1995); *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 962 (Bankr.N.D.Ill.1995). Alternatively, misrepresentation can be shown through conduct, and does not require a spoken or written statement. *Haeske v. Arlington (In re Arlington)*, 192 B.R. 494, 498 (Bankr.N.D.Ill.1996) (finding debtor's conduct created a false impression under 523(a)(2)(A)).

Bombardier characterizes the Debtor's role in the transaction at issue as that of a "straw man." To this end, it argues that because Debtor used her good credit to purchase the Motorcycle for a person she knew had bad credit, and because she never intended to possess the Motorcycle or pay for it herself, the debt owed for the motorcycle should be excepted from discharge. To support that position, Bombardier cites three misrepresentations: (1) that the Debtor made an implied representation that she intended to pay for the Motorcycle when she in fact did not; (2) she represented that she would keep the motorcycle in her possession; and (3) at the time of purchase, she represented that she was purchasing the motorcycle for herself.

Bombardier argues that at the time of sale the Debtor made an express representation by signing the Agreement that she was purchasing the motorcycle for herself and that she would be the responsible party to pay for it. In addition, Bombardier points out that the Debtor represented in the Agreement as a condition of obtaining credit that she would keep the Motorcycle in her possession. Since she never intended any of those things, they were all misrepresentations.

Yet, the Debtor contends that at the time of purchase she told Kevin Marsh, the Pro Source employee, that she did not intend to possess the Motorcycle and that it would be operated by her boyfriend. In addition, the Debtor avers that she told Mr. Marsh that she did not have a motorcycle license and that she never intended to obtain one. Such testimony about what she told the sales person before signing her agreement essentially seeks to contradict the writing.

■ Through this argument, Debtor attempts to raise a factual issue whether she misrepresented her actual role in the transaction. She argues that prior to entering into the Agreement her alleged oral statements revealed the true nature of the transaction. But this argument depends on the admissibility of evidence showing that she made statements to the original lender before she purchased the Motorcycle. Rule 7056 Fed.R.Bankr.P. [Rule 56(e) Fed.R.Civ.P.] requires that affidavits opposing summary judgment "shall set forth facts as would be admissible in evidence...." *See Wigod v. Chicago Mercantile Exch.*, 981 F.2d 1510, 1518 (7th Cir.1992). Therefore, even though defendant did not tender evidence in *form* admissible at trial, *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (but see fn. 2, "the evidence set forth must be of a *kind* admissible at trial."), she

was obliged to show that her evidence would be admissible at trial. A party simply may not rely on inadmissible evidence in an affidavit or deposition to oppose a motion for summary judgment. *Bombard v. Fort Wayne Newspapers*, 92 F.3d 560, 561 (7th Cir.1996), citing *Wigod v. Chicago Mercantile Exch.*, 981 F.2d 1510, 1518–19 (7th Cir.1992).

■ Debtor contends in her motion for summary judgment that she made all of the oral statements relied on prior to purchasing the Motorcycle. Therefore, the evidence she now seeks to have considered would change the written agreement and constitutes parol evidence that would not be admissible at trial.

The Agreement was formed in Illinois, and Illinois law applies. *See* Undisputed Facts Nos. 1–3. The Agreement was a contract for sale of goods.[2] The Uniform Commercial Code ("UCC") as adopted in Illinois applies:

> Final Written Expression: Parol or Extrinsic Evidence. Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented (a) by course of dealing or usage of trade (Section 1–205) or by course of performance (Section 2–208); and (b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a

complete and exclusive statement of the terms of the agreement.

810 ILCS 5/2–202.

■ It is well established under the UCC that no evidence is admissible to show prior written or oral agreements, or contemporaneous oral agreements contradicting the contract. 810 ILCS 5/2–202; *J & B Steel Contractors, Inc. v. C. Iber & Sons, Inc.*, 162 Ill.2d 265, 205 Ill.Dec. 98, 102, 642 N.E.2d 1215, 1219 (1994) (adopting Restatement (Second) of Contracts to explain Illinois U.C.C. parol evidence rule); *see also*, Rest.2d. Contracts § 209(3) and cmt. c and Ill. 3 ("If the oral agreement contradicts the writing, or if the writing is a complete integration, evidence of the oral agreement is excluded."); J. Calamari & J. Perillo, Contracts § 3–3, at 128 (4th ed.1998). Since the parol evidence rule "precludes evidence of understandings, not reflected in a writing, reached before or at the time of its execution which would vary or modify its terms," Debtor's proffered evidence of her alleged misrepresentations at the time of purchase shall not be considered. *J & B Steel Contractors*, 642 N.E.2d at 1217;. *Eichengreen v. Rollins*, 325 Ill. App.3d 517, 259 Ill.Dec. 89, 757 N.E.2d 952, 956–57 (1st Dist.2001) (same).

■ Any possible argument by Debtor that parol evidence of her representations should be introduced to explain the terms of the Agreement would be without merit. The contract in this case is on its face unambiguous, and a "party claiming that a contract is ambiguous must first convince the [court] that this is the case ... and must produce object facts, *not* subjective and self-serving testimony, to show that a contract which looks clear on its face is actually ambiguous." *Brooklyn Bagel*

---

2. Exhibit B of the parties' "Stipulated Facts In Supplement to Each Parties' Statement of Material Facts" represents the Agreement for the sale of the Motorcycle, which indicates that the contract and security agreement represent a "SALE" whereby the buyer, Debtor, is to purchase "Goods" from the seller, Pro Source.

*Boys, Inc. v. Earthgrains,* 212 F.3d 373, 381 (7th Cir.2000) (applying Illinois U.C.C. and citing *Murphy v. Keystone Steel & Wire Co.,* 61 F.3d 560, 564 (7th Cir.1995)).

If the parties intended the alleged oral representations to be part of the Agreement, the written document would have included these substantial terms. Because it is well-settled that all prior negotiations are merged into a written contract which is conclusively presumed to include all material terms, Debtor's proffered evidence— her alleged representations prior to purchasing the Motorcycle—should not be considered. *See Geoquest Productions, Ltd. v. Embassy Home Entertainment,* 229 Ill.App.3d 41, 170 Ill.Dec. 838, 593 N.E.2d 727 (1st Dist.1992). As a matter of law the parol evidence rule bars Debtor's alleged pre-sale statements on which she now relies.

■ Therefore, the undisputed record shows that the Debtor misrepresented her role in the transaction to the lender. In the Agreement, Debtor made express written representations that she was purchasing the Motorcycle for herself, that she would be the party making payments on the Motorcycle, and that she would maintain possession of the Motorcycle. (See Security Agreement at Exhibit B of Stipulated Facts in Supplement to Parties' 402(M) and 402(N) Statements ¶¶ Promise to Pay and Payment Terms and Ownership and Duties Toward Property). Yet is it undisputed that the Debtor signed the Agreement while she was not purchasing the Motorcycle for herself but she intended to give it to her boyfriend. Further, it is undisputed that when she purchased the Motorcycle she did not intend to make the payments on the Motorcycle, but, instead, she intended that her boyfriend would make the payments for the loan. Thus, by structuring the transaction in this manner, the Debtor made overt representations in

the contract that, as she admits, were in fact contrary to her actual intentions. Accordingly, Bombardier has shown that no genuine issue of material fact exists as to whether the Debtor made misrepresentations, which constitute false pretenses under 11 U.S.C. § 523(a)(2)(A).

### *Intent to Deceive*

■ Bombardier must show that the Debtor intended to deceive the creditor. Proof of intent to deceive a creditor is determined by a debtor's subjective intention at the time the representation was made. *Mercantile Bank v. Canovas,* 237 B.R. 423, 428 (Bankr.N.D.Ill.1998). Alternatively, intent to deceive can be shown by logically inferring the intent to defraud. *In re Sheridan,* 57 F.3d 627, 633 (7th Cir.1995). The test requires that Bombardier show that the Debtor knew the representation was false or acted with such reckless disregard for the truth as to constitute willfulness. *Id.* But an intent to defraud can be inferred from a clearly false representation that the debtor knows or should know will induce another to make a loan.

Bombardier argues that the Debtor was masquerading as someone who intended to actually repay the loan, when the Debtor did not intend to repay the loan herself but intended the dealer to believe otherwise. Essentially, Bombardier argues that the Debtor's fraudulent intent is evidenced by the inconsistency between the Debtor's conduct of signing the agreement and her undisputed intention. By signing the agreement, the argument runs, Debtor intended for the creditor to believe she would be responsible for the debt, yet it is undisputed that when she purchased the Motorcycle she did not intend on making the payments or possessing the Motorcycle.

■ Proof of intent to deceive is measured by Debtor's subjective intention at the time she misrepresented her role in the transaction. *Mercantile Bank v. Canovas*, 237 B.R. 423, 428 (Bankr.N.D.Ill. 1998). Here, it is undisputed that at the time she purchased the Motorcycle, the Debtor had no intention on making the payments on the loan, that she never intended to possess the Motorcycle, and that she intended to allow her boyfriend—who had poor credit—to operate, possess, and make the payments on the loan. By virtue of her misrepresentations, it is reasonable to logically infer that the Debtor intended to trick the lender into believing it was contracting with her, when she was simply a nominal party to the transaction. *See In re Sheridan*, 57 F.3d 627, 633 (7th Cir.1995)(explaining intent to deceive may be inferred intent where known false representations are made that would induce another to act). Therefore, no genuine issue of material fact remains of whether Debtor possessed the subjective intent to deceive under § 523(a)(2)(A).

### Justifiable Reliance

■ Bombardier must show that it justifiably relied, to its detriment, on Debtor's misrepresentations. Justifiable reliance is a less demanding standard than reasonable reliance and requires only that the creditor did not "blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Field v. Mans*, 516 U.S. 59, 71, 116 S.Ct. 437, 133 L.Ed.2d 351 [1995]. Justifiable reliance is an intermediate level of reliance, falling somewhere between the more stringent "reasonable reliance" guidepost and the lenient "reliance in fact." *Id.* at 74–75, 116 S.Ct. 437. In application, this standard does not impose a duty to investigate unless the falsity of the representation is easily de-

tectable. *Id.* at 70–72, 116 S.Ct. 437. By virtue of the unique circumstances of each case, the issue of justifiable reliance is not considered under an objective standard, but rather a fact sensitive inquiry should be made into the characteristics of a particular plaintiff. *Id.* at 71, 116 S.Ct. 437.

Bombardier argues that it had no knowledge that the Debtor did not intend to pay for the motorcycle when it took the assignment and it relied upon the Agreement and upon the Pro Source's credit check. In support of this argument, Bombardier asserts that the Debtor made representations through the Agreement that as a condition of obtaining credit for the purchase of the Motorcycle, she would keep the property in her possession and only transfer the motorcycle with Plaintiff's consent.

■ Bombardier frames the issue of its justifiable reliance by centering the issue at the time it was assigned the Agreement from Pro Source, the assignor. For purposes of Section 523(a)(2), however, the timing of the fraud and the elements to prove fraud focus on the time when the lender, Pro Source, made the extension of credit to the Debtor. In other words, Bombardier as assignee of the Agreement, steps into the shoes of its assignor Pro Source, and the inquiry of whether a creditor justifiably relied on Debtor's alleged misrepresentations is focused on the moment in time when that creditor extended the funds to Debtor. *See McClellan v. Cantrell*, 217 F.3d 890, 896 (7th Cir.2000) (Ripple, Circuit Judge, concurring) (noting Congress' use of "obtained by" in § 523(a)(2) "clearly indicates that fraudulent conduct occurred at the inception of the debt, i.e., the debtor committed a fraudulent act to induce the creditor to part with his money or property.").

It is uncontroverted that Pro Source extended the Debtor credit based upon its credit check of the Debtor and the Debtor's representations that she would make the payments on the loan. (See Security Agreement at Exhibit B of Stipulated Facts in Supplement to Parties' 402(M) and 402(N) Statements ¶ Promise to Pay and Payment Terms). In other words, had Pro Source known that Richard Ray—who undisputedly had bad credit—would be in possession of the Motorcycle and be assuming responsibility for the payments, it would not have entered into the transaction in the first instance. Here, Pro Source did not blindly ignore obvious misrepresentations because by virtue of Debtor's execution of the contract a "cursory glance" could not have revealed the actual facts and circumstances of the transaction. *AT & T Universal Card Services v. Alvi* (*In re Alvi*), 191 B.R. 724, 731 (Bankr. N.D.Ill.1996). Accordingly, the record demonstrates that Pro Source justifiably relied on the Debtor's misrepresentations to its detriment under § 523(a)(2)(A), and Bombardier is entitled to the benefit of that reliance.

### Conclusion on the Dischargeability Claim Under § 523(a)(2)(A)

Bombardier has shown that no genuine issue of material fact exists as to whether the Debtor incurred the Debt owed to Bombardier by means of false pretenses under 11 U.S.C. § 523(a)(2)(A). The uncontroverted record shows that by signing the contract Debtor misrepresented her role and purpose in the transaction. The undisputed facts show that the Debtor had no intention of possessing or paying for the Motorcycle, yet she represented that she was purchasing the Motorcycle for herself and that she would be the party to make the payments under the terms of the Agreement. Moreover, the lender had no knowledge from the contract that the Debtor was acting merely as a front in the transaction and that she had no intention of purchasing or paying for the Motorcycle herself. Furthermore, the lender was justified in relying on Debtor's written representations because a cursory examination of the Debtor's representations could not reveal the true nature of her intent in the transaction. Accordingly, Bombardier's Motion for Summary Judgment on Count I of its Complaint will be allowed by separate order, and Debtor's Motion for Summary Judgment on Count I will be denied.

### Count II: Dischargeability Claim under § 523(a)(4) for Debts Arising from Debtor's Embezzlement

 A debt resulting from a debtor's embezzlement is nondischargeable. 11 U.S.C. 523(a)(4). To establish the nondischargeability of a debt because of a debtor's embezzlement, the creditor must show by a preponderance of the evidence (1) that the debtor appropriated the subject funds for his own benefit and (2) that he did so with fraudulent intent or deceit. *Matter of Weber,* 892 F.2d 534, 538 (7th Cir.1989). To prove embezzlement, Plaintiff must show that Debtor appropriated the funds for her own benefit, and that it did so with fraudulent intent. *Id.* Absent intent to defraud, the misappropriation of property does not constitute embezzlement. *In re Rigsby,* 152 B.R. 776, 778 (Bankr.M.D.Fla.1993).

 Embezzlement under 523(a)(4) is defined as the fraudulent appropriation of the creditor's property by the debtor to whom it has been entrusted or into whose hands it has lawfully come. *Pierce v. Pyritz,* 200 B.R. 203, 205 (N.D.Ill.1996); *see also, Matter of Weber,* 892 F.2d 534, 538 (7th Cir.1989). Embezzlement differs from larceny only in that the original taking was lawful. *In re Rose,* 934 F.2d 901, 903 (7th Cir.1991). Therefore, by definition, before a creditor can make a claim of

nondischargeability for embezzlement, it must show that the property allegedly embezzled by the Debtor was property of the creditor. *Chrysler First Commercial Corp. v. Nobel (In re Nobel)*, 179 B.R. 313, 315 (Bankr.M.D.Fla.1995).

In support of it claim, Bombardier argues that since Debtor allowed its secured property to be converted to her own purposes—by giving custody of it to her boyfriend, and by allowing the property to be lost, and apparently unrecoverable—Debtor embezzled its property. This argument fails for two reasons.

First, the Debtor cannot embezzle property that she lawfully owns. Contrary to Bombardier's argument, the original creditor is not the owner of the Motorcycle; it possessed a perfected security interest in Debtor's property. The original creditor was not and Bombardier is not the owner of the Motorcycle; they possessed only a perfected security interest in Debtor's property. *See* Undisputed Facts, supra, at ¶ 8. Moreover, the undisputed facts reveal that the parties intended for the Debtor to have legal title to the Motorcycle. Accordingly, since the cornerstone of embezzlement is the appropriation of property *belonging to another person or entity*, one cannot "embezzle" one's own property. This principle is true for purposes of discharge exception. *See, e.g., In re Conder*, 196 B.R. 104, 111 (Bankr.W.D.Wis.1995); *In re Contella*, 166 B.R. 26, 30 (Bankr. W.D.N.Y.1994); *Matter of Storms*, 28 B.R. 761, 765 (Bankr.E.D.N.C.1983) ("Where the parties' conduct indicates a debtor-creditor relation, funds that come into the hands of the debtor belong to him and his subsequent use of them is not embezzlement."). In other words, Bombardier possesses only a lien, and is not in ownership or possession of the property. *In re Contella*, 166 B.R. 26, 30 (Bankr.W.D.N.Y. 1994).

Second, although a creditor whose security interest has unquestionably been injured cannot make a claim under 523(a)(4) for embezzlement because the debtor cannot embezzle property to which she has title, the creditor should instead make its claim for nondischargeability under 523(a)(6). *Chrysler First Commercial Corp. v. Nobel*, 179 B.R. 313, 315 (Bankr. M.D.Fla.1995). In addition to accepting the reasoning that a security interest is not an ownership interest that can be embezzled, the court in *Nobel* explained an additional rationale for rejecting an embezzlement claim under 523(a)(4) where the property allegedly embezzled was property in which the debtor had title but subject to a creditor's security interest:

> It is true that this [type of] interest may be injured an if it was done with the requisite willfulness and malice may be the basis of a claim of non-dischargeability under § 523(a)(6). However, it could not be the basis of a claim based on embezzlement pursuant to § 523(a)(4) because the funds allegedly embezzled were not the funds of the [secured creditor]. It is hardly logical to assume that Congress intended that the two exceptions to discharge, one based on embezzlement, § 523(a)(4); the other on willful, malicious injury to property of an entity, 523(a)(6), were intended to be used interchangeably and both have the same operating elements and proof of the other.

*Nobel*, 179 B.R. at 315–316; *see also, In re Lloyd Phillips*, 882 F.2d 302 (8th Cir. 1989).

Because Debtor has title to the Motorcycle a claim for embezzlement of the Motorcycle cannot lie. Accordingly, Bombardier has failed to show that the Debtor's conduct comes within Section 523(a)(4). Therefore, Bombardier's motion on Count

II of its Complaint is entirely denied, and Debtor's motion is allowed.

### Count III: Dischargeability Claim under § 523(a)(6) for Debtor's Willful and Malicious Conduct

Section 523(a)(6) of the Bankruptcy Code provides:

(a) A discharge under section 727 does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or the property of another entity.

11 U.S.C. § 523(a)(6).

A creditor seeking a determination of non-dischargeability under § 523(a)(6) must show three elements by a preponderance of the evidence: (1) that the Debtor intended to and caused an injury; (2) that the Debtor's actions were willful; and (3) that the Debtor's actions were malicious.

Under § 523(a)(6) "willful" means a palpable intent to cause injury, not merely the commission of an intentional act that happens to result in an injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

Section 523(a)(6) does not encompass "situations in which an act is intentional, but injury is unintended, *i.e.*, neither desired nor in fact anticipated by the debtor." *Id.* According to the benchmark set forth in *Geiger*, Bombardier must show that Debtor intended that her actions bring about injury to Bombardier. *Id.* at 61–62, 118 S.Ct. 974. Thus, injuries inflicted by the Debtor's negligent or reckless actions do not fall within the boundaries of 523(a)(6). *Id.* at 63–64, 118 S.Ct. 974. Furthermore, in the context of debts arising from conversion, a conversion of anoth-

er's interest, each as arguably occurred when Debtor turned the Motorcycle over to her boyfriend is not sufficient to meet the willful and malicious standard of subsection (a)(6). *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332, 55 S.Ct. 151, 79 L.Ed. 393 (1934) (recognized as viable rule for conversion by *Geiger*); *see e.g., In re Scotella*, 18 B.R. 975, 976–77 (Bankr. N.D.Ill.1982) (explaining that the debtor must have a conscious intent to violate the property rights of another.).

The malice required by 523(a)(6) requires an intent to cause harm; recklessness or negligence will not suffice. *Geiger*, 523 U.S. at 64, 118 S.Ct. 974. Bombardier must show four elements to demonstrate maliciousness under section 523(a)(6): (1) a wrongful act, (2) done intentionally by the debtor; (3) which causes injury to the creditor; (4) is done without just cause or excuse. *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir.1994).

Bombardier argues that the Debtor has acted willfully and maliciously by turning over property encumbered by its security interest for her boyfriend's use, by failing to verify if the property was stolen or if the "motor blew up", and by her general failure verify whereabouts of the collateral. Pointing to the undisputed fact that Debtor purchased the Motorcycle for her boyfriend with her credit because he did not have good credit, Bombardier argues that Debtor's conduct is without just cause or excuse.[3]

Although the Debtor is shown to have been careless in her oversight of the secured property, no evidence showed that it was Debtor's intention to deprive Bombardier of its lien on the property or to damage the motorbike. While Debtor's con-

---

**3.** Under all counts of Bombardier's motion and supporting documents, Bombardier does not consistently categorize which element it is discussing. This leaves the court to charac- terize its arguments as they most logically pertain to the elements which a specific argument probably seeks to support.

duct was negligent or even reckless, "[such] injuries do not fall within the compass of 523(a)(6)." *Geiger,* 523 U.S. at 64, 118 S.Ct. 974. Even if Debtor intentionally breached the Agreement, without more, such conduct is not sufficient to establish a willful and malicious injury for the purposes of 523(a)(6). *See e.g., In re Pasek,* 129 B.R. 247, 252 (Bankr.D.Wyo.1993). Most importantly, Bombardier has neither set forth any argument or evidence to show that the Debtor "intentionally destroyed [Bombardier's] security interest" in the Motorcycle. (emphasis added). *In re Cox,* 243 B.R. 713, 719 (Bankr.N.D.Ill. 2000) (finding debtor acted willfully under § 523(a)(6) where by selling parts from car, which was subject to creditor's security interest, debtor knew that creditor's ability to protect itself—i.e. through repossession—was made impossible).

Bombardier cites, without explanation, three cases representative of the willful and malicious injury where property is converted or disposed. The first, *United Bank of Southgate v. Nelson,* 35 B.R. 766 (N.D.Ill.1983), found that the debtors acted willful and maliciously towards the creditor's security interest because they refused to turn over insurance proceeds to which the bank was rightfully entitled. Likewise, the second, *Hoc, Inc. v. McAllister,* 211 B.R. 976 (Bankr.N.D.Ala.1997), held that a debtor acted willful and maliciously by failing to remit proceeds from sales that were subject to the creditor's security interest. Since the debtors in both cases refused to turn over funds subject to the creditor's security interest, the decisions do not support Bombardier's argument that Debtor's conduct constitutes a willful and malicious injury to its property. Merely showing that Debtor allowed her boyfriend to possess the property and that she failed to keep track of the property is insufficient to show a willful and malicious intent to destroy Bombardier's property under § 523(a)(6). Thus, the cases stand in contrast to Bombardier's position. Moreover, both cases are of diminished value since they were decided before the Supreme Court delineated the modern standard for 523(a)(6) in *Kawaauhau.*

Accordingly, Bombardier's motion is denied on Count III of its complaint, and Debtor's motion for summary judgment is allowed on that Count.

## CONCLUSION

For the foregoing reasons, by separate order Plaintiff–Bombardier's Motion for Summary Judgment on Count I is allowed, and Defendant–Debtor's Motion for Summary Judgment on Count I is denied. However, Debtor's Motion for Summary Judgment on Counts II and III is allowed, and Bombardier's cross motion on Counts II and III is denied. The parties will be called on to present separate final and appealable judgment orders in accord with these rulings.