NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                                          ) BAP Nos. CC-12-1112-PaDKi
                                                )          CC-12-1141-PaDKi
WILLIAM SPENCER REINGOLD and                    )           (Cross Appeals)
ALIDA ANN REINGOLD,                             )
                                                ) Bankr. No. 10-24329-RN
                Debtors.                        )
_____) Adv. Proc. No. 10-01903-RN
                                                )
WILLIAM SPENCER REINGOLD,                       )
                                                )
                Appellant and                   )
                Cross-Appellee,                 )
                                                )
v.                                              ) **M E M O R A N D U M**[1]
                                                )
SHARON SHAFFER,                                 )
                                                )
                Appellee and                    )
                Cross-Appellant.                )
_____)

Argued and Submitted on February 22, 2013,
at Pasadena, California

Filed - March 19, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Charles E. Rendlen, III, Bankruptcy Judge, Presiding

_____

Appearances:     Shai S. Oved argued for appellant William Spencer
                 Reingold; Philip Dennis Dapeer argued for appellee
                 Sharon Shaffer.

_____

Before: PAPPAS, DUNN and KIRSCHER, Bankruptcy Judges.

_____

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Chapter 7[2] debtor William Spencer Reingold ("Reingold") appeals from a decision of the bankruptcy court determining that $76,000 of a total debt of $126,000 he owed to creditor Sharon Shaffer ("Shaffer") was excepted from discharge under § 523(a)(2)(A). Shaffer cross-appeals, arguing that the total debt should be excepted from discharge under § 523(a)(2)(A). We AFFIRM.

**FACTS**

Reingold is a contractor and real estate developer. In 2008, he hoped to purchase and rehabilitate a single-family residence in Santa Barbara that had been damaged by fire (the "Property"). At some point not clear in the record, but before having contact with or receiving any funds from Shaffer, Reingold withdrew money from his children's IRA accounts and made a deposit of $32,000 into escrow for the purchase of the Property.

Reingold did not have sufficient funds from his available resources to complete the acquisition of and work on the Property, nor to meet his other business expenses. Reingold enlisted Shaffer's financial aid.

On October 24, 2011, Shaffer gave Reingold a check for $50,000. Reingold cashed it and the check cleared the bank on October 28, 2011. Reingold asserts that the money given to him by Shaffer was intended to be a general purpose loan to support his business. Shaffer disputes this, and contends that the loan was

---

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as Civil Rules.

intended solely for Reingold's use to acquire and improve the Property.

On October 31, 2011, Reingold and Shaffer signed a Loan Agreement and Promissory Note (the "Loan Agreement"), prepared by Reingold, containing, in part, the following terms:

[SHAFFER] agrees to loan [REINGOLD] the sum of $126,000 dollars (Hereinafter, "the Loan Amount") to be used for purchase and rehabilitation of [the Property]. FOR VALUE RECEIVED, [REINGOLD] promises to pay to the order of [SHAFFER] the sum of $150,000 dollars within one year. . . . If the Loan Amount is not repaid within one year interest thereafter will accrue at a rate of 16% annually on any unpaid principal or interest. Upon acquisition of the [Property] [REINGOLD] grants [SHAFFER] an immediate secured interest in [the PROPERTY] as a secondary lienholder.

On November 17, 2008, Shaffer gave Reingold a second check, this one for $76,000. The check cleared the bank on November 25, 2011.

On April 20, 2009, Reingold canceled the escrow on the Property and the $32,000 deposit was refunded to him.

On July 21, 2009, Shaffer sued Reingold in state court for breach of contract and to collect on the promissory note. Shaffer conceded in the bankruptcy court that she did not assert a cause of action for fraud against Reingold in state court. The state court granted a default judgment against Reingold in favor of Shaffer on November 4, 2009, for $126,000 in damages, $12,047.00 interest, $43,069.00 attorney's fees, and $2,595.00 costs, for a total of $183,711.00.

Reingold and his wife filed a petition under chapter 7 on April 14, 2010.

Shaffer filed an adversary complaint against Reingold on May 24, 2010, and a First Amended Complaint ("FAC") on August 24,

-3-

2010. In the FAC, Shaffer sought a determination that the debt owed by Reingold[3] to her was excepted from discharge in bankruptcy under § 523(a)(2)(A). Specifically, Shaffer alleged that the representations made to her by Reingold in the Loan Agreement — that the loan proceeds would be used for the purchase and rehabilitation of the Property — were false and fraudulent at the time they were made; that Reingold was aware of that falsity; that Reingold made those representations with the intent to obtain the loan and to defraud Shaffer; and that Shaffer relied on those representations and was proximately damaged by them. Reingold filed an answer on September 21, 2010, admitting that he signed the promissory note and Loan Agreement, but generally denying the remaining allegations.

Shaffer submitted a trial brief to the bankruptcy court in which she argued that: (1) Reingold obtained the loan proceeds of $126,000 based on false statements, which were compounded by Reingold's concealment of material facts, such as his financial inability to acquire the Property and his intention to use the funds for purposes other than the Project; (2) Reingold never intended to use the loan proceeds for the purpose he represented to Shaffer; (3) Reingold did not use the proceeds for their intended purpose; (4) Shaffer was victimized by Reingold.

Reingold's trial brief acknowledged that he had defaulted on his contractual obligations under the Loan Agreement, but denied that he committed any fraud. Generally, Reingold asserted that he

---

[3] In her First Amended Complaint, Shaffer asserted that Reingold's wife, Alida Ann Reingold, was also responsible for the debt. The parties agreed to dismiss Alida as a defendant with prejudice before the trial in the adversary began.

did not make any material misrepresentations, with knowledge of any falsity, upon which Shaffer relied and sustained injury.

The bankruptcy court conducted a trial on November 28, 2011. Shaffer and Reingold were represented by counsel. They were the only two witnesses, and both were subject to cross-examination. At the close of testimony, the court took the issues under advisement.

On January 9, 2012, the bankruptcy court announced its oral decision on the record. It found that the debt represented by the $76,000 check given by Shaffer to Reingold was excepted from discharge under § 523(a)(2)(A) because those loan proceeds were obtained by false pretenses and used for purposes other than as specifically represented in the Loan Agreement.

On the other hand, the bankruptcy court ruled that the debt represented by the $50,000 check could be discharged. The court found that the money represented a general purpose loan from Shaffer to Reingold for development of the Property. The court would later in its findings observe that a general purpose loan is that "for which the borrower could use the loan for any purpose."

The bankruptcy court entered a judgment in favor of Shaffer and against Reingold on February 16, 2012, for $76,000, which it declared to be excepted from discharge under § 523(a)(2)(A). Reingold timely appealed the judgment. Shaffer filed a timely cross-appeal.

### JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

-5-

**ISSUES**

Whether the bankruptcy court erred in determining that the debt represented by the $50,000 check was not excepted from discharge under § 523(a)(2)(A).

Whether the bankruptcy court erred in finding that the debt represented by the $76,000 check was excepted from discharge under § 523(a)(2)(A).

**STANDARDS OF REVIEW**

The question whether a claim is excepted from discharge under § 523(a)(2)(A) presents mixed issues of law and fact which we review de novo. Diamond v. Kolcum (In re Diamond), 285 F.3d 822, 826 (9th Cir. 2001). We review the bankruptcy court's findings of fact for clear error. Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 378 (9th Cir. BAP 2011).

**DISCUSSION**

Section 523(a)(2)(A) provides that: "A discharge . . . does not discharge an individual debtor from any debt . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by — (A) false pretenses, a false representation, or actual fraud[.]" To demonstrate to the bankruptcy court that a debt should be excepted from discharge under § 523(a)(2)(A), a creditor must prove five elements: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222 (9th Cir. 2010); Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 35 (9th Cir. BAP 2009). The creditor bears the burden of proving all five elements by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991); In re Weinberg, 410 B.R. at 35.

This appeal focuses on whether Reingold made fraudulent representations to Shaffer to obtain the loans and, if so, when. Reingold argues that he never misrepresented his intent to Shaffer and, thus, the bankruptcy court erred in holding any portion of his debt to Shaffer excepted from discharge. Shaffer defends the decision of the bankruptcy court that the $76,000 she paid to Reingold on November 17 was excepted from discharge, but argues in her cross-appeal that the Loan Agreement signed on October 31, 2008, was an integrated contract and, therefore, the bankruptcy court was obliged to treat funds received both on October 24, 2008, and November 17, 2008, as a single transaction for purposes of measuring Reingold's entitlement to a discharge for purposes of § 523(a)(2)(A).

**I.**

**The bankruptcy court did not err in determining that the debt represented by the $50,000 check was not excepted from discharge under § 523(a)(2)(A).**

In resolving the issues, we must first examine the timing of the relevant events in this case. The parties hotly dispute whether there was a misrepresentation[4] and when it occurred.

---

[4] The parties and the court have used the terms "misrepresentation," "false representation" and "false pretenses" interchangeably. Properly viewed, there are distinctions. A false representation is an express misrepresentation, while a
(continued...)

Reingold acknowledged at trial that he signed the Loan Agreement on October 31, 2008.

> Q: [The Loan Agreement] has a date — that's your signature on page 1-21?
>
> REINGOLD: Yes, it is.
>
> Q: And it's dated October 31, 2008. Do you recall signing this at that time?
>
> REINGOLD: Yes, sir.

Trial Tr. 7:11-13. Shaffer then testified:

> Q: You signed [the Loan Agreement] on October 31, 2008, correct?
>
> SHAFFER: Yes, I did.
>
> Q: And Mr. Reingold signed it at the same time, correct?
>
> SHAFFER: Yes, he did.

Trial Tr. 63:11-14, November 28, 2011. Despite some later equivocation by Shaffer,[5] based on the evidence, the bankruptcy

---

[4](...continued) false pretense refers to an implied misrepresentation or conduct intended to create and foster a false impression. See In re Young, 91 F.3d 1367, 1374 (10th Cir. 1996) (citing Itaparica, Ltd. v. Hargrove (In re Hargrove), 164 B.R. 768, 772 (Bankr. N.D. Okla. 1994) (recognizing that an implied representation constitutes "false pretenses" for purposes of § 523(a)(2)(A))). The parties have not raised any issue regarding the distinction between false representation and false pretense and so we will not examine the question. Smith v. Young (In re Young), 208 B.R. 189, 199 (Bankr. S.D. Cal. 1997) ("The conceptual difficulty attending such a fine differentiation, however, leads courts to typically ignore the negligible difference between the two phrases.")

[5] Shaffer would state under cross-examination that she gave Reingold the $50,000 check at the same time that she signed the Loan Agreement. Trial Tr. 70:2-6. She also indicated that they dated the Loan Agreement for October 31 because "I think silly on my end. I just wanted to extend that year — that year long period, span." However, she did not give any specific date other than October 24 for delivery of the check and October 31 for signing the Loan Agreement. And to the extent that this
(continued...)

-8-

court could properly find that the Loan Agreement, with its alleged misrepresentation, was executed by the parties on October 31, 2008.

It was also established in the bankruptcy court as a matter of disputed fact that Shaffer gave Reingold the check for $50,000 on October 24 or, in other words, before the parties executed the Loan Agreement. The evidence in the record confirms that the check was dated and signed by Shaffer on October 24, and that the check was honored by the bank on October 28, 2008. The proof also showed that the second check for $76,000 was given by Shaffer to Reingold on November 17, 2008, after the Loan Agreement was signed.

Against this temporal sequence, the bankruptcy court found that: "[The $76,000] loan proceeds were to be used only for the development of the [Property]. Such representations were the inducement for Plaintiff Sharon Shaffer to make the loan to Defendant William Reingold. The specifics and restrictions, including the material representation that the $76,000 was to be used for this property were established on October 31st, 2008." H'rg Tr. 4:2-10, Jan. 9, 2012.

In her cross-appeal, Shaffer does not challenge the bankruptcy court's finding that Reingold's representation concerning his proposed use of the loan funds was made on

[5](...continued)
contradicts both her earlier testimony and the testimony of Reingold, the bankruptcy court did not clearly err in accepting the dates on which both parties' testimonies agree, that is, October 24 for delivery of the $50,000 check and October 31, 2008, when both parties signed the Loan Agreement.

October 31 in the Loan Agreement. Instead, she argues that, as the Loan Agreement expressly provides, the parties' agreement was an integrated contract governing the terms of the total loan of $126,000. Under California contract law, since the parties' intent was that there was but a single loan, Shaffer argues that the bankruptcy court erred by its finding that there were, in fact, two loans made by Shaffer to Reingold. Because there was only one loan, and because that loan was conditioned on the terms in the Loan Agreement restricting Reingold's use of the loan proceeds to acquiring and developing the Property, Shaffer insists the total debt must be excepted from discharge under § 523(a)(2)(A).

Shaffer's argument misses the point. As it arises in the context of Reingold's bankruptcy case, this contest does not implicate state contract law, nor the interpretation of the terms of the Loan Agreement. Instead, the critical issue is if and when Reingold engaged in any fraud in connection with Shaffer's extension of credit to him, and the disposition of that question is through application of § 523(a)(2)(A).

There is no dispute that Reingold was indebted to Shaffer for $126,000 as evidenced by the Loan Agreement. Nor is it disputed that the Loan Agreement contains a clause that the loan proceeds were to be used for the purchase and development of the Property. What is disputed is whether that contract clause constituted a misrepresentation, known to be false by Reingold, that was intended to defraud Shaffer, and whether Shaffer relied on that representation and suffered a proximate injury as a result. Those concerns derive exclusively from federal bankruptcy law, not state

-10-

law.  Grogan, 498 U.S. at 284.[6]

It is perhaps unfortunate that the bankruptcy court seemed to refer to the checks issued on October 24, 2008, and November 7, 2008, as independent loans.  However, a fair review of the record indicates that the court was attempting to distinguish between the two payments by Shaffer to Reingold in relation to his representation about his intended use of the loan proceeds.  In this respect, the bankruptcy court correctly noted that one payment was made by Shaffer before Reingold's actionable fraud under the bankruptcy law occurred, and the other afterwards.

In particular, the facts found by the bankruptcy court were that the $50,000 payment was made to Reingold on October 24, 2008.  However, Reingold would not make the misrepresentation that the loan proceeds would be used solely to acquire and develop the Property until the Loan Agreement was presented to Shaffer on October 31, 2008.  To except a debt from discharge under § 523(a)(2)(A), the critical misrepresentation must occur at or before the point where "the money was obtained."  Campos v. Beck (In re Beck), 2012 WL 2127751 at *3 (Bankr. D. Ariz. June 11, 2012) ("The plaintiff must make an 'initial showing that the alleged fraud existed at the time of, and has been the methodology

---

[6]  Reingold also attempts to argue principles of contract law are applicable here.  He suggests that this is a contest over a breach of contract, which he freely admits he committed, and he concedes that Shaffer holds a dischargeable claim against him for $126,000.  But Reingold fails to appreciate the distinction between breach of contract and fraud.  As our Court of Appeals explained the critical difference, breach of contract is the "failure to honor one's promise, but breaking a promise that one intends not to keep is fraud."  United States v. Univ. of Phoenix, 461 F.3d 1166, 1172 (9th Cir. 2006)(citing United States ex rel. Main v. Oakland City Univ., 426 F.3d 914 (7th Cir. 2005).

-11-

by which, the money, property or services were obtained.'"), quoting Conn. Attys. Title Ins. Co. v Budnick (In re Budnick), 469 B.R. 158, 174 (Bankr. D. Conn. 2012); Aslakson v. Freese (In re Freese), 472 B.R. 907, 918 (Bankr. D.N.D. 2012); In re Woodall, 177 B.R. 517, 523-24 (Bankr. D. Md. 1995); In re Ethridge, 80 B.R. 581, 587 (Bankr. M.D. Ga. 1987). In other words, misrepresentations made by a debtor to a creditor after the credit has been extended have no effect upon the discharge of the debt.

Simply put, the target misrepresentation must have existed at the inception of the debt, and a creditor must prove that he or she relied on that misrepresentation. As the Panel has explained,

> For purposes of [§] 523(a)(2), however, the timing of the fraud and the elements to prove fraud focus on the time when the lender . . . made the extension of credit to the Debtor. . . . In other words, . . . the inquiry of whether a creditor justifiably relied on Debtor's alleged misrepresentations is focused on the moment in time when that creditor extended the funds to Debtor. See McClellan v. Cantrell, 217 F.3d 890, 896 (7th Cir. 2000)(Ripple, Circuit Judge, concurring) (noting Congress' use of "obtained by" in § 523(a)(2) "clearly indicates that fraudulent conduct occurred at the inception of the debt, i.e. the debtor committed a fraudulent act to induce the creditor to part with his money or property.").

New Falls Corp. v. Boyajian (In re Boyajian), 367 B.R. 138, 147 (9th Cir. BAP 2007) (citing Bombardier Capital, Inc. v. Dobek (In re Dobek), 278 B.R. 496, 508 (Bankr. N.D. Ill. 2002)). As a leading treatise explains, "if the property and services were obtained before the making of any false representation, subsequent misrepresentations will have no effect on dischargeability." 4 COLLIER ON BANKRUPTCY ¶ 523.08[1] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed., 2012).

-12-

Here, the bankruptcy court found that the only representation made by Reingold to Shaffer in connection with the $50,000 check paid on October 24, 2008, was that it was to be a general purpose loan, to be used in conducting his business, which the court characterized as a "loan for which the borrower could use the loan proceeds for any purpose." H'rg Tr. 5:20-21. Moreover, the court found that Reingold "did use a portion of the $50,000, as well as personal effort and services, toward the project." H'rg Tr. 5:6-8.

Whether the debtor made a misrepresentation is a finding of fact reviewed for clear error. Candland v. Ins. Co. of N. Am. (In re Candland), 90 F.3d 1466 (9th Cir. 1996) (citing In re Lansford, 822 F.2d 902, 904 (9th Cir. 1987)). The bankruptcy court's finding that no misrepresentation was made by Reingold to Shaffer until October 31, 2008, a week after she gave him the initial $50,000 check, is supported by the record and was not clearly erroneous. Because no misrepresentation occurred at or before the time of the $50,000 payment, the Panel need not review whether the other elements for an exception to discharge under § 523(a)(2)(A) are present as to that payment. The bankruptcy court did not err in determining that the debt represented by the $50,000 check was not excepted from discharge under § 523(a)(2)(A).

**II.**
**The bankruptcy court did not err in determining that the $76,000 payment was excepted from discharge under §523(a)(2)(A).**

Reingold argues that the bankruptcy court erred when it decided that his debt to Shaffer for the $76,000 payment was

-13-

excepted from discharge. He contends that the entire $126,000 debt was dischargeable. At bottom, Reingold's position amounts to a challenge to the bankruptcy court's fact findings and lacks merit.

A. <u>Misrepresentation</u>. As discussed above, the bankruptcy court found that Reingold represented in the Loan Agreement that the $76,000 he received from Shaffer was to be specifically and solely used for acquisition of and work on the Property, and that he would account for his use of the funds to Shaffer. In particular, in the words of the bankruptcy court, through the Loan Agreement, "Debtor [represented that the] loan proceeds were to be used only for the development of the [Property]. Such representations were the inducement for Plaintiff Sharon Shaffer to make the loan to Defendant William Reingold. The specifics and restrictions . . . were established on October 31, 2008." Hr'g Tr. 4:8-10. The court then found that "the $76,000 loan was to be specifically used and accounted for by the Defendant. That the Defendant obtained the loan by false pretenses in that he failed to specifically account, keep the Plaintiff informed and utilize[d] the funds for purposes that can only be assumed for other than specifically intended on the development of the [Property]." H'rg Tr. 5:9-16. The court also found that, at the time he entered into the Loan Agreement, Reingold "concealed from [Shaffer] . . . [his] intention not to use the loan proceeds strictly in accordance with the purpose of the $76,000 loan contract." H'rg Tr. 6:1-3. Simply stated, the bankruptcy court found that Reingold intentionally concealed his intent to use the $76,000 in loan funds as specifically agreed in the Loan Agreement

-14-

for purposes other than acquisition and development of the Property.

A debtor's silence or omission of a material fact can constitute a false representation which is actionable under § 523(a)(2)(A). <u>Citibank (South Dakota), N.A. v. Eashai (In re Eashai)</u>, 87 F.3d 1082, 1088-89 (9th Cir. 1996). Moreover, "[t]he nature of a scheme to defraud by false representations can be shown by accumulated evidence . . . and subsequent conduct." <u>United States v. Gibson</u>, 690 F.2d 697, 701 (9th Cir. 1982). In this case, Reingold's failure to account to Shaffer for the use of the loan proceeds when she requested that he do so, and his failure to adequately account to the court for the money, could evidence Reingold's fraudulent intent.[7]

The bankruptcy court considered the testimony of the parties on this topic from both Reingold and Shaffer. Reingold insisted that he never concealed information from Shaffer with the intent to defraud her. Indeed, Reingold testified that he specifically told Shaffer that he would use the funds for purposes other than the Project. Trial Tr. 117:8-10. Shaffer was equally adamant that Reingold never told her that he would use the funds for purposes other than the Project and she would not have provided

---

[7] Reingold argues that the bankruptcy court's findings that faulted him for his failure to account to Shaffer, or to the court, for the use of the $76,000 demonstrates that the court conflated the elements for an exception to discharge for fraud or defalcation by a fiduciary under § 523(a)(4) with those required to show actual fraud under § 523(a)(2)(A). This argument is misplaced. Shaffer did not allege a claim for relief under § 523(a)(4). And as discussed above, Reingold's failure to account for the loan funds was apparently viewed by the bankruptcy court as evidence of Reingold's intent to conceal his fraudulent conduct. The bankruptcy court did not err in this regard.

-15-

the funds to him had she known that Reingold would use them for a purpose outside the restrictions of the Loan Agreement. Trial Tr. 64:9-14. As noted above, whether there was a misrepresentation is a question of fact reviewed for clear error. In re Candland, 90 F.3d at 1466. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). Anderson v. City of Bessemer City, NC, 470 U.S. 564, 574, (1985). And we must defer to a bankruptcy court's findings based on testimonial evidence. Rule 8013.

Here, the bankruptcy court did not clearly err when it found that Reingold made a misrepresentation to Shaffer concerning his intended use of the $76,000 in loan proceeds.

B. Knowledge of the falsity or deceptiveness of a statement, or conduct and an intent to deceive. The bankruptcy court found that Reingold actively concealed his true purpose not to apply all the restricted funds to acquiring or developing the Property. Knowledge of the falsity or deceptiveness of a statement is a question of fact. Runnion v. Pedrazzini (In re Pedrazzini), 644 F.2d 756, 758 (9th Cir. 1981) (The existence of scienter is a question of fact, not to be reversed on appeal unless clearly erroneous.). The bankruptcy court had testimony from both parties and its ruling, again based on conflicting testimonial evidence, is not clearly erroneous.

Moreover, the bankruptcy court had evidence of Reingold's behavior subsequent to the Loan Agreement from which it could infer that Reingold did not intend to apply the funds solely to the Property. It is well established that courts can consider subsequent conduct in determining fraudulent intent as long as

-16-

that conduct provides an indication of the debtor's state of mind at the time of the false representations. <u>Williamson v. Busconi</u>, 87 F.3d 602, 603 (1st Cir. 1996) (explaining that "subsequent conduct may reflect back to the promisor's state of mind and thus may be considered in ascertaining whether there was fraudulent intent at the time the promise was made"); <u>Strominger v. Giquinto (In re Giquinto)</u>, 388 B.R. 152, 167 (Bankr. E.D. Pa. 2008) (stating that "[a]n often employed indicia, especially with respect to fraudulent actions under § 523(a)(2)(A), centers on a debtor's subsequent conduct"); <u>Siebanoller v. Rahrig (In re Rahrig)</u>, 373 B.R. 829, 834 (Bankr. N.D. Ohio 2007) (same); <u>Stein v. Tripp (In re Tripp)</u>, 357 B.R. 544, 548 (Bankr. D. Ariz. 2006) (noting that a court "may consider subsequent conduct to the extent that it provides an insight into the debtor's state of mind at the time of the representations"); <u>Lucas v. Lyle (In re Lyle)</u>, 334 B.R. 324, 334 (Bankr. D. Mass. 2005) (explaining that "subsequent conduct can reflect a debtor's state of mind at the time the representation is made"); <u>Visotsky v. Woolley (In re Woolley)</u>, 145 B.R. 830, 836 (Bankr. E.D. Va. 1991) (same); <u>Miller v. Krause (In re Krause)</u>, 114 B.R. 582, 606 (Bankr. N.D. Ind. 1988) (same).

Shaffer testified that Reingold failed to communicate any information regarding his efforts to acquire and rehabilitate the Property. He provided no written accounting or other financial statements regarding her investment. Trial Tr. 65:12. He did not inform her that he had canceled escrow on the Property and taken the funds back in his own name. Trial Tr. 65:24. Indeed, Shaffer never found out about the canceled escrow until she filed her

state court lawsuit. Trial Tr. 66:20. Reingold did not dispute that testimony.

The only documentary evidence produced at trial concerning his use of the loan proceeds was Reingold's selection of checks that he alleged represented expenditures from Shaffer's funds on the Project. However, in his testimony, Reingold was unable to link the checks to the Property or establish that the funds were provided by Shaffer. For example: (1) Check 1033 for $2,000, for "taxes for IEG Corporation" for the period 2006-2007, well before Shaffer was involved with Reingold or the Project." Trial Tr. 33:3-5. (2) Check 1037, dated December 23, 2008, for $5,000, for "expenses and salary for subs." Reingold testified that he did not know what work was done for that $5,000. Trial Tr. 35:1. (3) Two checks not identified in Reingold's testimony totaling $23,000. Reingold was not able to state whether the $23,000 was partly or fully attributed to the Project. Trial Tr. 35:16-22. (4) Check 4157 for $5,187 to the California Franchise Tax Board for "state taxes." In testimony, Reingold admitted "I don't know if it had anything to do with [the Project]. Probably nothing." Trial Tr. 36:20-21. (5) Check 4176 for $3,000 to Natalia Avenegas. Reingold testified, "I don't remember who she was." Trial Tr. 38:4. (6) A check in October 2008 to IEG (a wholly owned corporation of Reingold) for $17,000 marked "Loan to IEG." Reingold testified that the $17,000 was for "construction projects that I had running at that time." Trial Tr. 38:20-21. In short, on their faces, the checks submitted by Reingold in discovery and then admitted in the bankruptcy court do not conclusively support his argument that the expenditures they represent were related in

-18-

full to the Project.

Moreover, Reingold never properly established the source of the funds for the checks. Reingold failed to provide in discovery or at trial the bank statements to trace the source of the funds for the checks. After testifying that he had lost or misplaced financial records following a fire and burglary at his home, Trial Tr. 52:8-22, this colloquy followed with counsel for Shaffer:

> COUNSEL: So, did you ever make any effort to get [the bank statements and missing checks] online or directly from the bank? Calling on the bank and asking for the copies of these — of the bank statements over this period of time so that I or Ms. Shaffer could do an accounting as to what money came in and out of the account to which you deposited her loan proceeds?

> REINGOLD: No, I just acquired the checks that we used to – that we spent to the money, that we could find.

Trial Tr. 52:22-53:4. Without the supporting bank statements, neither the parties nor the bankruptcy court could trace the funds from Shaffer to Reingold.

In sum, the bankruptcy court had testimonial evidence that Reingold withheld information from Shaffer about his work on the Project. He failed to inform Shaffer that he had stopped escrow on the Project and claimed the funds for himself. He was not able to provide documentary evidence that he had used Shaffer's funds for their intended purpose. And he was unable to provide adequate records related to either the Project or use of Shaffer's funds. Reingold's subsequent conduct, therefore, exhibited two badges of fraud as discussed in a recent bankruptcy court decision:

> For purposes of § 523(a)(2)(A), a common badge of fraud concerns whether a defendant made any effort to perform their obligation. Chase Bank v. Brumbaugh (In re Brumbaugh), 383 B.R. 907, 912 (Bankr. N.D. Ohio 2007). As this Court previously explained: "as a general rule,

-19-

the greater the extent of a debtor's performance, the less likely it will be that they possessed an intent to defraud." Ewing v. Bissonnette (In re Bissonnette), 398 B.R. 189, 194 (Bankr. N.D. Ohio 2008).

Bartson v. Marroquin (In re Marroquin), 441 B.R. 586, 593 (Bankr. N.D. Ohio 2010). The Bartson court went on to identify "failure to keep adequate records" as another badge of fraud in a debtor's subsequent conduct that would show intent to defraud for § 523(a)(2)(A) purposes. Id.

Here, the bankruptcy court did not clearly err in finding that:

The Court finds that the $76,000 loan was to be specifically used and accounted for by [REINGOLD]. That [REINGOLD] obtained the loan by false pretenses in that he failed to specifically account, keep [SHAFFER] informed and utilize the funds for purposes that can only be assumed for other than specifically intended on the development of the [PROPERTY].

Hr'g Tr. 5:11-16.

C. Justifiable reliance by the creditor on the debtor's statement or conduct. The bankruptcy court found that Shaffer relied on Reingold's misrepresentation and concealment. Whether Shaffer justifiably relied on Reingold's misrepresentation is a question of fact. Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh), 973 F.2d 1454, 1456 (9th Cir. 1982); Deitz v. Ford (In re Deitz), 469 B.R. 11, 34 (9th Cir. BAP 2012). There is nothing in the record to indicate a reason why Shaffer should not rely on the representation in the Loan Agreement that funds would be used on the Property. Shaffer testified that she was acquainted with Reingold from their mutual interest in surfing, that she was aware that Reingold was a contractor, and that she was given a prospectus concerning the Property by

-20-

Reingold before signing the Loan Agreement. There is nothing apparent in this record to indicate that Shaffer should not trust Reingold's representations. It was not clearly erroneous for the bankruptcy court to conclude that Shaffer justifiably relied on the misrepresentations of Reingold.

D. <u>Damage to the creditor proximately caused by the debtor's statement or conduct</u>. The bankruptcy court found that Shaffer "was damaged in the amount which the court now determines to be [$]76,000 of the loan proceeds based upon defendant's failure to account for the use and disposition of the Shaffer loan proceeds." Hr'g Tr. 6:5-9. Determination of proximate cause and assessing damages under § 523(a) is a question of fact. <u>Britton v. Price (In re Britton)</u>, 950 F.2d 602, 605 (9th Cir. 1991). The bankruptcy court did not clearly err in determining that Shaffer was proximately damaged in the amount of $76,000.

In sum, the record supports the bankruptcy court's decision that the debt to Shaffer for the $76,000 arose as a result of Reingold's fraudulent misrepresentation and is excepted from discharge under § 523(a)(2)(A).[8]

### CONCLUSION

We AFFIRM the judgment of the bankruptcy court.

---

[8] Reingold raises several issues regarding evidentiary rulings made by the bankruptcy court. However, Reingold does not specify the particular evidentiary rulings to which he objected, nor whether he raised the objections challenged on appeal in the bankruptcy court. Reingold does not explain how the bankruptcy court's evidentiary rulings were prejudicial. We will not reverse even erroneous evidentiary rulings unless they are prejudicial. <u>Allstate Ins. Co. v. Herron</u>, 634 F.3d 1101, 1110 (9th Cir. 2011). We therefore decline to consider Reingold's evidentiary challenges.